Statement.

# Richmond.

MILLER v. MILLER.

JANUARY 17; 1901.

1. ARBITRATION—*Boundaries—Parol Submission—Parol Award.*—Parties may agree by parol to settle by arbitration the dividing line between their lots of land, and an award made in pursuance of a submission for that purpose will bind the parties, although the arbitrators make a parol award, where the submission does not require the award to be in writing.

2. RESULTING TRUST—*Payment of Purchase Money—Parol Evidence.*— Where one buys land with the money of another, and takes a conveyance to himself, a trust results by operation of law in favor of the party furnishing the money. The trust may be established by parol, but the proof must be clear.

3. RESULTING TRUST—*Payment of Part of Purchase Money—Aliquot Part.*— In order to establish a resulting trust, arising from the payment of purchase money by another, it is not necessary that the beneficiary should have furnished the whole of the purchase money, nor an exact aliquot part thereof. If the amount paid is certain, a trust will result with respect to an undivided share of the land proportioned to his share of the whole price.

Appeal from a decree pronounced by the Circuit Court of Buckingham county at its October term, 1898, in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*F. C. Moon,* for the appellant.

*Patteson & Patteson,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

In March, 1898, Reuben Miller filed his bill in the Circuit Court of Buckingham county against Hubbard Miller, in which the following averments are made: That the plaintiff and his brother, the defendant, in the year 1879 purchased together, at the price of $391.87, a tract of 137½ acres of land situated in Buckingham county, sold at public auction by commissioners of the court in a certain chancery cause; that while the said land was purchased by him and his brother together, the bid was made in the name of his brother, Hubbard, and the sale reported and confirmed in his name, and the deed to the land made to him; that plaintiff was not only a party to the purchase, but he paid the sum of $65.60 as a part of the purchase money, it being agreed and understood between him and his brother that he should be interested in the land to that extent; that plaintiff has always resided on said land with his brother, and shared with him in the cultivation and profits thereof, and a few years theretofore his brother laid off to him thirteen acres of the said land as his part, and put him in possession thereof, which said thirteen acres lies next to Little George's creek, adjoining the lands of Robert Bowling, Blanton and others, and was laid off by a regular line of partition, and plaintiff is now in possession of said thirteen acres, and has built upon and improved the same; that his brother now refuses to make plaintiff a deed of conveyance to the said thirteen acres, or to recognize in writing his right thereto, and is disposed to dispute his right to the same. The prayer of the bill is that the defendant be required to convey to the plaintiff the said thirteen acres of land.

The defendant answered the bill, and filed two special pleas thereto; the one setting up as a defence the statute of frauds, and the other the statute of limitations.

In his answer, the defendant admits that the plaintiff paid $60, as a part of the purchase money for the land in question, but

claims that he has no interest in the land, because of the fact that he had cut and sold from it railroad ties and tan bark in excess of the amount of the purchase money he had paid. He further admits that he once agreed to an arbitration by certain persons named to determine what interest the plaintiff had in the land; but claims that the arbitration was never completed, and that therefore he is not bound by anything the arbitrators did.

At the hearing of the cause on the pleadings, the depositions of witnesses and documentary evidence offered by the parties, the Circuit Court decreed "that the contract set out in the bill and the proof to sustain the same are too vague, indefinite and uncertain to justify a decree for the enforcement of the said contract," and dismissed the bill, requiring each party to pay his own costs. From this decree the plaintiff appealed to this court.

It is perfectly clear from the evidence in the cause, indeed, from appellee's admissions, that, before the sale of the land in question, there was an agreement between him and appellant that they would buy the land together, the same to be bid in by appellee; that the two were to take and hold the land in the proportions that each paid for it; that, pursuant to this agreement, the appellant went into the possession of a certain portion of the land, paid a certain portion of the purchase money therefor—about one-tenth of the whole, including interest, taxes, etc.—and erected buildings, and made other improvements on the portion in his possession. Just when appellant made the payments, that he did make, does not fully appear, but they were made pursuant to the agreement that the two would buy the land together, and before the whole of the purchase money was paid, and appellee had taken a deed for the land to himself. The appellee, being the more prosperous of the two, paid much the larger part of the purchase money for the land. Owing to the fact that they are both illiterate and without business expe-

rience, they conducted their transactions in an unbusiness-like manner; but appellee, at the start and down to the early part of 1897, a period of nearly eighteen years, fully recognized that appellant had an interest and an ownership in the land, and had the right to occupy that portion of it upon which he had built houses and made other improvements. The relations existing between them up to that time seem to have been harmonious, in fact, confidential; and in order to avoid trouble and difficulty, as appellee states, they, in the early part of 1897, mutually agreed that three persons of their own race and color, selected by them, and who were also unlettered, should go upon the land, and ascertain and determine all matters in dispute between the parties concerning the land, and that their decision should be accepted as final by both parties. These arbitrators, so selected, met on the premises, and, after hearing the statements and admissions of both appellant and appellee, determined that of the entire purchase money for the land, including interest, costs, etc., appellant had paid one-tenth—$67.50—and appellee the residue, and accordingly decided that one-tenth of the land, 13⅔ acres, more or less, including the buildings and improvements put thereon by him, belonged to appellant, and should be laid off to him, of which findings both parties were then apprised by the arbitrators. A short time afterwards, two of the arbitrators stepped off, as near as they could, as they testify, the appellant's 13⅔ acres, and laid off a line between his and appellee's land, though the latter was not present when this line was laid off. After all this had been done the appellee seems to have concluded that he would not acquiesce in the settlement of the matter by the arbitrators, whose decision he had agreed to abide by, but would deny appellant's right to any portion of the land.

While these proceedings by the arbitrators are not in strict compliance with chapter 143 of the Code, providing for an arbitration and award in such controversies, what then took place not only corroborates thoroughly the statements of the appellant

as to his contract with appellee concerning the purchase and ownership of the land, but appellee should be held bound thereby as to the amount of the purchase money for the land paid by appellant and as to how the dividing line separating his part of the land from that of appellee should be located.

In *Jones* v. *Dewey*, 17 N. H. 596, it was held that parties may agree to settle by arbitration the division line between their lots of land, and an award, made in pursuance of a submission for that purpose, will bind the parties, although the arbitrators make a parol award, where the submission does not require it to be in writing. The opinion in that case further says: " It is wholly immaterial whether the submission that was entered into in this case was by deed or by parol, written or unwritten; and, unless the terms of submission required the award to be in one or the other of the forms indicated, the arbitrators were at liberty to make it in such form as they might see fit to adopt."

Under the circumstances of this case, neither the statute of frauds nor the statutes of limitations can avail appellee. His counsel ably present in their brief a number of authorities in support of the contention that the contract set up by appellant in his bill and proof is too vague, indefinite and uncertain to be specifically enforced, but we deem it unnecessary to review them, as we are of opinion that they are not applicable to the case.

There was an express agreement between the parties to this controversy, as we have seen, that they would buy the entire tract of land together, each to have an interest in it to the extent that he paid the purchase money. Two of the arbitrators referred to testify that, according to appellee's own statements, the appellant had paid one-tenth of the entire purchase money for the land, including costs, expenses, etc. The appellee practically admits this in his deposition when he says, in answer to cross questions as to the agreement under which the admitted payments by appellant were made, " we agreed to buy this land, and

he paid those amounts under this agreement, and built those houses on it."

Not until about eighteen years after the purchase and the building of the houses on the land by the appellant referred to did the appellee assert an adverse claim to the entire tract of land, and there is nothing to show laches or unreasonable delay of the appellant in asserting his rights.

" Where one, with another's money, buys an estate, and takes the conveyance in his own name, by presumption of law, a trust results in favor of him whose money is thus used. ' Such trust may be established by parol proof, but the proof must be clear." *Kane* v. *O'Conners*, 78 Va. 76, and authorities cited.

" It is frequently said that in order to create a resulting trust, payment of the purchase money must be made at the time of the purchase; but by this is only meant that the trust must arise from the original transaction, and at the time it takes place, and at no other time.    *    *   "   1 Beach on Mod. Eq. Jur., sec. 223.

" If such funds are paid in pursuance of the contract of purchase, it does not matter whether they were paid before, at the time of, or after the purchase." *Webb* v. *Bailey*, 41 West Va. 463.

It is not necessary that the *cestui que trust* should advance the whole of the purchase money, but if he advances any part of it, a trust will result in his favor to the extent of the part that he did advance. *Kane* v. *O'Conners, supra,* and authorities cited. See also 2 Story's Eq. Jur. (11th ed.), sec. 1201c; 1 Leading Cases in Eq., 323, 340-1; 10 Amer. & Eng. Enc. L., 17 and notes.

In *Currence* v. *Ward*, 43 West Va., 367, the opinion discusses elaborately the question whether or not the amount of money used in the purchase of the land should be an exact aliquot part of the whole, and holds that "where one pays part of the purchase price of land, and a deed is taken in another's name, so that a resulting trust arises, so it is certain what amount the

one claiming under the trust paid, whether the part paid be an exact divisor of the whole or not—that is, whether it be an aliquot part or not—is immaterial, this will be a trust *pro tanto.* There must be certainty as to the interest in the land."

"A trust results in favor of one who pays a part of the price. In other words, where two or more persons together advance the price, and the title is taken in the name of one of them, a trust will result in favor of the other with respect to an undivided share of the property proportioned to his share of the price." 2 Pom. Eq. (2d ed.), sec. 1038.

In the case at bar, there is no uncertainty as to the contract between the parties as to how the land was to be purchased by them, nor as to the interest that appellant was to have in the land—it being in the proportion that he paid of the purchase money therefor—nor as to the amount of the purchase money paid by him. Accordingly, the arbitrators, to whom these matters were submitted, ascertained and determined that the appellant had paid one-tenth of the purchase money, and was entitled to one-tenth of the land, viz., 13⅔ acres, more or less, including the buildings thereon erected and occupied by him, and laid off a line dividing his land from that of the appellee.

We are, therefore, further of opinion that appellant is entitled to the 13⅔ acres of the land in question, in accordance with the finding of the arbitrators, Booker, Jones and Taylor, as testified to by the two first named; and the decree appealed from will be reversed and annulled, with costs to appellant; the cause will be remanded to the Circuit Court for such further proceedings as may be found necessary to require the appellee, Hubbard Miller, to convey by a proper deed, the said 13⅔ acres of land, together with all buildings and improvements thereon, to the appellant, and if need be to appoint a commissioner of that court to make said conveyance.

*Reversed.*