ANNIE SKAHEN et al.

v.

WILLIAM IRVING.

206   597
e213  122
d214  312

*Opinion filed December 16, 1903—Rehearing denied February 3, 1904.*

1. TRUSTS—*what tends to establish a trust and rebut presumption of advancement.* The fact that the entire estate of a husband or father has been placed in the name of his wife or child by conveyances, leaving him penniless at an advanced age, with other children having equal claims upon him, tends to rebut the presumption that such transactions were intended as advancements or settlements, and in such case the intention must control.

2. SAME—*when conveyance must be given effect.* A direct conveyance from father to daughter, even though intended to be in trust for the grantor, must be given effect where the Statute of Frauds is pleaded, unless fraud or imposition, out of which the law would raise a constructive trust, is established.

3. SAME—*what does not defeat resulting trust.* That the grantee in a deed to property purchased with funds of another assumes an encumbrance by the recitals of the deed alone, does not defeat the resulting trust to the extent of the deferred payment, where all the money paid upon the property was furnished by the purchaser, there being no intention that the grantor should pay anything. (*Fleming* v. *McHale,* 47 Ill. 282, adhered to.)

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

O'DONNELL & BRADY, and WILLIAM DILLON, for appellants:

A resulting trust is a trust which arises by construction or operation of law, from facts and circumstances. It does not arise from contract or agreement. It cannot be proved or made out by testimony as to what the parties understood or agreed to at the time the deed was made. *Monson* v. *Hutchin,* 194 Ill. 431; *McDonald* v. *Stowe,* 109 id. 40; *VanBuskirk* v. *VanBuskirk,* 148 id. 9.

The presumption is strongly in favor of the legal or record title, and the facts relied on to establish a resulting trust must be proved by testimony that is clear,

explicit and convincing, and such as is capable of no reasonable explanation except on the theory that a trust was intended. *McGinnis* v. *Jacobs*, 147 Ill. 24; *Goelz* v. *Goelz*, 157 id. 33.

As between strangers, proof of the advance of the purchase money by one party and the taking of the deed to another raises a presumption of a trust. But where the party who advances the purchase money is the husband or father of the person to whom the deed is taken, the presumption is the other way. In such a case the party who seeks to establish the resulting trust must first prove, by clear, explicit and convincing evidence, the fact of the advance of the purchase money by him, and after that fact has been proved must also prove, by evidence of a similar character, the existence of other facts which the court will regard as being sufficient to rebut the presumption of gift. *Evans* v. *Curtis*, 190 Ill. 197; *Dorman* v. *Dorman*, 187 id. 154; *Pool* v. *Phillips*, 167 id. 432; *Goelz* v. *Goelz*, 157 id. 33; *Whitney* v. *Ogle*, 47 N. J. Eq. 67; *Read* v. *Huff*, 4 id. 229.

The whole of the purchase money, or some definite part of it, must have been advanced at the time of the taking of the legal title to some other party. The trust must arise at the time the legal title is put in the other party, or not at all. *VanBuskirk* v. *VanBuskirk*, 148 Ill. 9; *Stephenson* v. *McClintock*, 141 id. 604; *Dick* v. *Dick*, 172 id. 578; *Keith* v. *Miller*, 174 id. 65.

It seems that it must not only be some definite part, but an aliquot part, of the whole purchase money. *Stephenson* v. *McClintock*, 141 Ill. 604.

Where only part of the purchase money is paid at the time the deed is made, and the legal liability for the deferred payments is assumed by the party who takes the legal title, there can be no resulting trust to the extent of such deferred payments, no matter who in fact pays them. *Olcott* v. *Bynum*, 17 Wall. 44; *Reed* v. *Reed*, 135 Ill. 482; *Devine* v. *Devine*, 180 id. 447.

In so far as the early case of *Fleming* v. *McHale*, 47 Ill. 282, decides this point the other way, it is submitted that it must be regarded as overruled by the later decisions.

Flower, Vroman & Musgrave, for appellee:

The gift of a husband's or father's entire estate to a wife or child, by way of advancement, is unreasonable. In such case a resulting trust arises. *Pool* v. *Phillips*, 164 Ill. 432; *Dorman* v. *Dorman*, 187 id. 154; *Adlard* v. *Adlard*, 65 id. 212; *Persons* v. *Persons*, 25 N. J. Eq. 250; *Smithsonian Institute* v. *Meech*, 169 U. S. 398; 1 Perry on Trusts, (5th ed.) p. 200, note *a*.

If there is any circumstance accompanying the purchase which explains why it was taken in the wife's or child's name, and shows it was not intended to be an advancement but was intended to be a trust for the husband or father, the presumption of an advancement will be rebutted and the inference of a trust will be established. 1 Perry on Trusts, (5th ed.) sec. 146, p. 199.

The fact that the title was taken in the name of the wife and daughter, with the knowledge and consent of the husband, is unimportant here. In some cases the fact is material on the question of intent, but it is never controlling. Even though there may be a verbal contract claimed by the husband on the part of the wife to hold the property in trust the same way the law would imply, yet the court may ignore the contract, and hold, from the circumstances of the transaction, that a resulting trust arises; and the Statute of Frauds is no bar. *Furber* v. *Page*, 143 Ill. 622; *McNamara* v. *Garrity*, 106 id. 384; *Harris* v. *McIntyre*, 118 id. 275; *Wormley* v. *Wormley*, 98 id. 544; *Reynolds* v. *Sumner*, 126 id. 58; *Towle* v. *Wadsworth*, 147 id. 80.

Mr. Justice Ricks delivered the opinion of the court:

The original bill in this case was filed November 28, 1900, by the Title Guaranty and Trust Company, as conservator of William Irving, an insane person, making

Annie Irving, a daughter, and Charles E. Harding, defendants. On the same day the suit was filed Annie Irving was married to Thomas Skahen, and the bill was afterwards amended making him a party defendant, Annie Skahen being the principal defendant, Charles E. Harding being made defendant by reason of having purchased of Annie Skahen a part of the property in controversy. There were three pieces of property, together with notes given by Harding to Annie Skahen for another piece, in dispute. Before the trial of the cause William Irving was by order of the court adjudged to be sane and restored to the control of his property, and this suit was then prosecuted in his name. He was at the time of the trial seventy-six years of age.

The bill alleged that Annie Skahen, in August previous to the filing of the bill, had procured her father to be adjudged insane and sent to the asylum, and the bill sought to establish a resulting trust in certain property in the city of Chicago, known as No. 300 Twenty-third Place, No. 391 West Taylor street, No. 7703 Lowe avenue and No. 7700 Lowe avenue, the property known as No. 7703 Lowe avenue being the property purchased by Charles E. Harding in 1897. The record title of the other property stood in the name of Annie Skahen. The bill further alleged that the property in question had been purchased with the money of William Irving, and that the title had been placed in the name of Annie Skahen and her mother, Mary, for convenience, inasmuch as appellee, William Irving, could neither read nor write, and that there was no intention of a gift or advancement, there being three other children living at the time of the conveyances to Annie Skahen. Mary Irving, wife of appellee and mother of appellant Annie Skahen, died previous to the filing of the bill in this suit.

Annie Skahen filed her answer, denying all the material allegations of the complainant's bill, and declaring that a part of the property (being the properties on

Twenty-third Place and Taylor street) was purchased with money belonging to herself and her mother which they had previously earned at different times, the title being taken in the name of her mother and by her mother conveyed to her, and it was therefore her separate property; that the two properties on Lowe avenue were purchased with funds belonging to herself and her mother, and were intended to be the sole property of appellant Annie Skahen. It sets up the Statute of Frauds; alleges that the trust claimed is not manifested by any writing; pleads the Statute of Limitations, and sets up *laches* as to all of said properties. Charles E. Harding and Thomas Skahen filed their answer, neither admitting nor denying the allegations of the bill but praying for strict proof.

There had been several pieces of property besides those in question owned by William Irving which had been disposed of, the title to all being taken in the name of Mary Irving at the time of the purchase. The title to the properties known as No. 300 Twenty-third Place and No. 391 West Taylor street was at the time of the purchase placed in the name of Mary Irving, and October 23, 1889, was quit-claimed by Mary and William Irving to their daughter, Annie Skahen, then Annie Irving. The other pieces of property, known as Nos. 7700 and 7703 Lowe avenue, were at the time of the purchase, in 1891, deeded directly to Annie Irving, now Annie Skahen.

The trial court found the issues for complainant, William Irving, as to the properties Nos. 7700 and 7703 Lowe avenue, but as to the properties No. 300 Twenty-third Place and No. 391 West Taylor street found there was no fraud in procuring the deed from complainant, but that there was no evidence to show that he or his wife, in executing that deed, intended to make a gift of the property therein conveyed to the daughter, Annie Skahen, and found, as to these two pieces of property, the complainant is estopped by that deed from asserting a resulting trust, and decreed the property in fee to be in

appellant Annie Skahen.    Cross-errors were assigned as
to this part of the decree.

In the trial of the case there was no controversy be-
tween the parties interested as to the principles of law
applicable to the facts, except in regard to the legal
effect of the quit-claim deed of October 23, 1889, and in-
asmuch as the result will have to be determined mainly
from an examination of the facts, we will first discuss
what the evidence shows the facts to be.

Appellee came to Chicago in 1860, and at that time
had $330 in cash.    From the time of his arrival in Chi-
cago until 1890 he had steady work as a stationary engi-
neer, always commanding good wages.    The wife, Mary,
prior to her marriage with complainant was a servant,
with but little means, having at the time of her marriage
about $70.    As shown by the evidence, the average wages
of appellee from 1860 to 1873 were $100 per month.    He
worked very steadily, never being out of employment,
but for two years of the time mentioned he was unable
to give a definite statement as to his employment and
earnings.    In 1873 he began working for the McCormick
Harvester Machine Company at a salary of $100 per
month, and at various times thereafter his wages were
increased until the termination of said employment, in
1887, when he was, and had been for several years, re-
ceiving $1600 per year.    The books of the company show
that during that period the company paid him the sum
of $19,650.43.    He had two sons, who in 1880 began work
at the McCormick plant, and as they were not of age
their earnings went to their father.    The books of the
company show one of the boys earned $5082.07, which
the father received.    The other son is shown to have
earned $1763.43, which was likewise paid to his father.
The wages of both father and sons were turned over to
the wife of appellee.    It is further disclosed by the evi-
dence that appellee was the inventor of several valuable
patents, and up to the year 1890 received as royalties

therefrom the sum of $10,660.   The evidence shows that
from 1860 to 1890 he received from his patents, his indi-
vidual and his sons' earnings, an aggregate sum of $53,-
805.85.   This amount does not include rents received on
properties or interest on money loaned.   The evidence
shows him to have been a sober, industrious man and
very economical.   He transacted but little business, as
he had but little time for that purpose, since he worked
very steadily, going to his work early in the morning
and remaining at his post until the close of the day and
frequently until late at night.   His wife seems to have
had a fairly good education, and she managed their busi-
ness and assumed charge of their financial operations to
the extent of holding and lending their money and col-
lecting rents from real estate.   Each appears to have
had complete confidence in the other, so this arrange-
ment was satisfactory to appellee.   After the death of
Mrs. Irving the business was attended to by the daugh-
ter, Annie, about the same as the mother had previously
done.   Appellants contend, and there is some evidence
in that direction, that appellee, after the death of his
wife and after the purchase of all the property in dis-
pute, had some difficulty with women, but inasmuch as
this does not affect the title to the property we deem
it unnecessary to discuss this contention.   It is claimed
by appellant Annie Skahen that her mother conducted
a dairy on a small scale and kept boarders for several
years, and out of the profits thus accumulated a part of
the money was secured for the purchase of the property
here involved.   The evidence, however, in this regard is
conflicting as to whether either of the ventures just men-
tioned proved profitable.   Said appellant also contends
that she and her mother took contracts for sewing from
a cloakmaker, but there is no evidence that more than
$200 or $300 was realized from this source.

The trial court found, in its decree, that the four pieces
of property above mentioned were purchased with the

money of William Irving, and we think this finding well supported by the evidence. The first of the properties purchased was that at No. 300 Twenty-third Place. It was bought of Cyrus McCormick, June 27, 1873, being soon after the appellee went to work for the McCormick company, a bond for a deed being first taken in the name of Mary Irving. The purchase price was $2200. There was paid in cash $150 and the balance provided for by forty-one notes for $50 each, running from one to forty-one months, all the notes being signed by Mary Irving. At the end of each month the amount of a note was kept out of appellee's wages, and when the last note was paid, being in March, 1877, a deed was executed, by which the property was conveyed to Mary Irving.

The property known as No. 391 West Taylor street was purchased of Mary Conway, October 3, 1882, the purchase price being $5000. Appellant Annie Skahen contends that this property was purchased with the earnings and money of her mother; appellee contends the purchase was made by him, $600 being paid at the time of purchase and $400 being paid every three months. Appellee's contention seems to be supported by the evidence and the conditions that at that time existed, as he and his sons were at that time working at the McCormick works and their collective income was $2600 per year or over, from 1882 to 1886. The title to this property was also taken in the name of Mary Irving.

The Lowe avenue property No. 7703 was purchased from John L. Talbot, April 27, 1891, at $6300, $3800 being paid in cash and an indebtedness of $2500 assumed. The title to this property was taken in the name of Annie Skahen. There is some dispute as to the source from which the $3800 cash payment was derived, but the evidence discloses that in the latter part of 1890 appellee received $7500 from foreign patent rights, and it is conceded by the appellant Annie Skahen that $3000 of this money went toward the payment for this property. This

is the property purchased by appellant Charles E. Harding on September 8, 1897, who paid therefor $6700, part being cash, the exact amount not being shown by the evidence, and the balance was provided for by eighty-three notes for $50 each, part of which have since been paid to Annie Skahen.

The property described as No. 7700 Lowe avenue was purchased September 26, 1891, from Thomas J. Rice for $7000, $4000 being cash and an encumbrance of $3000 assumed by the purchaser. The title to this property was taken in the name of Annie Skahen. The evidence shows that the purchase money was derived from money invested by a man named Schumacher for appellee and his wife, and although the greater part of the money was deposited in the name of Mary Irving, we think the court was justified in finding the payment was made by appellee. There is no claim that Mary, the wife, had made any money, individually, for several years prior to this conveyance. It is shown that Mrs. Irving had sold some property that had previously been purchased in the same manner as the other property already mentioned, and placed the money at interest. Of the indebtedness on this property $1000 has since been paid, and there still remains an encumbrance of $2000.

As to the deed of October 23, 1889, it will be necessary to review the circumstances which led to its execution and the conveyance thereby of the properties known as No. 300 Twenty-third Place and No. 391 West Taylor street. Appellee was working in Sioux City, Iowa, and some time before, a mortgage had been placed upon the property known as No. 391 West Taylor street for $3000 and the money loaned to P. R. McLeod, son-in-law of appellee, to be used in the latter's business. In May, 1889, McLeod failed in business and made an assignment. Mrs. Irving and Annie became uneasy, fearing the creditors would try to hold appellee liable because of this $3000, upon the theory that McLeod and appellee were part-

ners. Immediately after the failure Annie went to see her father and represented to him that it was dangerous for him and his wife to hold the title to their property, and procured the deed conveying this property to her, and also a bill of sale of all of appellee's household effects and personal property of every kind. The deed was a quit-claim deed, and recited as its consideration the sum of $8000, and contained the further recital that the grantee was to have and to hold the same, and all the estate, right, title, interest and claim whatever of said party of the first part, either in law or in equity, to the only proper use, benefit and behoof of said party of the second part, her heirs and assigns forever. It is not pretended, however, that the grantee, in fact, paid any money. The bill does not charge that there was any fraud in the execution or procurement of this deed. Appellee subsequently assigned to Annie Skahen all his patent rights and the contracts for royalties arising from the same.

The evidence in this case was heard by the chancellor, except a part of the evidence of appellee which was taken by deposition, but during the trial appellee went upon the stand as a witness and testified to a great extent before the court, and from a patient and careful review of all the evidence we are unable to say that there was error in the conclusion of the court upon the facts in the record. We think the court was fully justified in finding that all the properties in controversy were purchased by appellee, and that the purchase price of all of them was paid by him from moneys arising from his own earnings, from his patents and from the earnings of his minor sons. While the evidence shows that appellee is an illiterate man, it also shows that he has good business judgment, and that the purchases of the various properties here involved, as well as other properties disposed of before this controversy and not involved, were made by him after careful investigation and con-

sultation with his wife and family and with business men whose judgment and experience were large. There can be little doubt in the mind of anyone, upon a careful consideration of the evidence, but that the title to the properties purchased by appellee was placed by appellee in his wife and in appellant Annie Skahen purely as a matter of convenience and because of his illiteracy and his implicit confidence in them. The evidence discloses that for nearly forty years appellee was a sober, industrious, economical man, and that his earnings and savings, for a man in the ordinary walks of life, were large. The finding of the chancellor that his earnings and income were more than $53,000 is fully supported by the evidence. It also appears that during the life of his wife she collected the rents, which for a good part of the time were from $75 to $100 a month, and after her death these rents were collected by Annie Skahen.

While it is true that the placing of property by a husband or father in the name of a wife or child is ordinarily presumed to be an advancement or settlement, yet in a case like the one at bar, where the record discloses that the earnings and income were large and the investments of an unusual character, and where to indulge the presumption that the placing of the properties in the name of the wife or child was a gift would have the effect of stripping the husband and father of all his property and leave him at an advanced age penniless, and at the same time leave other children, having equal claims upon him, wholly without recognition or a prospect of receiving any portion of his estate, such facts, alone, strongly tend to rebut such presumption. In such case the intention must control, and from the evidence in this record we are entirely satisfied with the finding of the chancellor that the conveyances, at the time they were made to the wife or to appellant Annie Skaken, were not intended as gifts or advancements. This view of the law, as applicable to this class of conveyances, has been many times recog-

nized and declared by this court. (*Pool* v. *Phillips*, 167 Ill. 432; *Dorman* v. *Dorman*, 187 id. 154; *Adlard* v. *Adlard*, 65 id. 212; *Wormley* v. *Wormley*, 98 id. 544; *Johnston* v. *Johnston*, 138 id. 385; *Smith* v. *Smith*, 144 id. 299; *Goelz* v. *Goelz*, 157 id. 33; *VanBuskirk* v. *VanBuskirk*, 148 id. 9.) Mr. Perry, in his work on Trusts, (5th ed. sec. 146,) thus states the rule: "If there is any circumstance accompanying the purchase which explains why it was taken in the wife's or child's name, and shows it was not intended to be an advancement but was intended to be a trust for the husband or father, the presumption of an advancement will be rebutted and the inference of a trust will be established." The same author, at section 147, says: "The real purchaser, if otherwise competent, may be a witness to state what his object, purposes and intentions were in making the trust and in taking the title in the name of his wife or child." In *Pool* v. *Phillips*, *supra*, we said (p. 442): "It has been uniformly held, whenever the question has arisen, that the gift of a husband's or father's entire estate to a wife or child, by way of advancement, is unreasonable."

The trial court found that by the execution of the quit-claim deed of October 23, 1889, conveying to appellant Annie Skahen the properties designated as No. 300 Twenty-third Place and No. 391 West Taylor street, appellee is estopped from now asserting any claim to said property, and decreed the title to the same to be in appellant Annie Skahen. These properties were originally placed in the name of Mary Irving, the wife of appellee and mother of appellant Annie Skahen, and the title to them was placed in Annie by the deed of October 23, 1889, above mentioned, upon the representation of the wife and daughter to appellee that there was danger that appellee would become involved in the failure in business of his son-in-law, McLeod, to whom he had advanced money; at least such seems to be the greater weight of the evidence. Appellee seems to have been of the impression that no such deed was in fact made, but

finally admitted its execution, and, if he had not done so, the record amply and sufficiently shows the existence of such deed. Just what was said and done at the time of its execution is uncertain. The evidence would rather tend to show an express trust, but not in writing, and as the Statute of Frauds was pleaded, appellee cannot have the benefit of such trust, if any there were. There is not sufficient fraud or undue advantage shown to have been taken of appellee by appellant Annie Skahen, at the time of that conveyance, to bring the same within the rule of *Larmon* v. *Knight*, 140 Ill. 232, where a constructive trust was declared. By that deed both the equitable and legal title to the properties included in it were limited to appellant Annie Skahen as grantee, and unless fraud or imposition were shown, out of which the law would raise a constructive trust, the conveyance must be given effect. (*Donlin* v. *Bradley*, 119 Ill. 412; *Myers* v. *Myers,* 167 id. 52.) So much of the decree, however, as attempts to vest title to the two properties last above named in appellant Annie Skahen must be reversed. She filed no cross-bill, and the effect of the decree was to give her affirmative relief, which cannot be done simply under an answer. *Mason* v. *McGirr*, 28 Ill. 322; *White* v. *White*, 103 id. 438; *Shields* v. *Bush*, 189 id. 534; *Ballance* v. *Underhill*, 3 Scam. 453.

As to the properties Nos. 7700 and 7703 Lowe avenue, we regard the decree of the superior court as right and as supported by the evidence. The record shows, relative to both of these properties, that when appellee purchased them each was subject to an encumbrance, and that the encumbrance was assumed by appellant Annie Skahen, as grantee in the deeds. The only assumption, however, made by her of such indebtedness was that arising from the recitals in the deeds themselves. She executed no personal obligation, and we think it clear, from the whole record, that at the time of the purchase it was not her intention or expectation, or the intention

206—39

of appellee, or of any of the parties to the transaction, that she should, in fact, pay anything upon either of said properties, but the intention was that the transaction was the transaction of appellee only, the title to the properties being taken in appellant Annie Skahen purely for convenience and because of the illiteracy of appellee, and we think that the record shows that all the money that was paid upon these properties was the money of appellee, and not the money, or any of the money, of appellant Annie Skahen.

Appellants urge that as only a part of the purchase money was paid at the time the deeds were made and the legal liability for the deferred payments was assumed by appellant Annie Skahen, who took the legal title, there can be no resulting trust to the extent of such deferred payments, no matter who, in fact, pays them, and they cite and rely upon *Reed* v. *Reed*, 135 Ill. 482, and *Devine* v. *Devine*, 180 id. 447, and insist that these cases must be held to overrule *Fleming* v. *McHale*, 47 Ill. 282, wherein the converse of this contention is held. We do not think there is any conflict between the cases, nor do we think the cases of *Reed* and *Devine* are applicable to the case at bar. We regard the case of *Fleming* v. *McHale* as squarely in point and directly applicable to this case, and adhere to the rule there announced. In that case two sons bought real estate for $1080 and caused the same to be conveyed to their mother. They paid $300 cash, and the mother executed her note and mortgage for the balance of the purchase money. The sons, in fact, paid the note thus executed by the mother for such balance, and the mother having died with the title still in her, a controversy arose between her heirs as to whether the property passed as part of her estate or was the property of the two sons who purchased it. On page 287 of that opinion the court said: "We agree with appellant that a resulting trust can only arise in favor of a person who claims to have furnished the consideration money, when such considera-

tion, or some aliquot part thereof, was furnished as part of the original transaction at the time the purchase was made, and the claimant must have occupied a position, originally, which would have entitled him to be admitted in the place of the person to whom the conveyance is made. (*Perry* v. *McHenry*, 13 Ill. 227.) Appellant insists that as the purchase price of the land was $1080, the sum paid by the young men, $300, was not an aliquot part thereof, and such part must be paid, as, one-half, one-third, or the like. Technically, $300 were not an aliquot part of $1080, because the latter divided by the former leaves a remainder, yet it was the whole amount required as the first payment. It was in part performance of the contract of purchase and all that was demanded at the time. Had the contract been one-third down, or one-half, and a less amount paid, then it could not be said an aliquot part was paid, but when, as in this case, a definite sum was to be paid, less than one-third, and it was paid, the contract to that extent is performed."

The decree of the superior court relative to the Lowe avenue properties, Nos. 7700 and 7703, is affirmed. As to so much of said decree as relates to the West Taylor street and Twenty-third Place properties which gives appellant Annie Skahen affirmative relief under her answer, the decree is reversed. The order should have been to dismiss appellee's bill as to those properties. So much of the decree of the court below as requires appellant Annie Skahen to account for rents and profits derived from the properties Nos. 7700 and 7703 Lowe avenue since the 26th day of September, 1891, is modified. We entertain the view that under the evidence Mary Irving, appellee's wife, during her life, and appellant Annie Skahen and appellee, all constituted one family, for the support of which and whom appellee and his property were liable, and that the wife, Mary, during her life, and the appellant Annie Skahen after the death of her mother, continued to apply the rents and

income of the properties to the support of the family and the care and maintenance of the properties, and, so far as disclosed by the evidence, the expenditures thus made were satisfactory to appellee until about the time of bringing his bill. Appellee should have all the rents and profits of No. 7700 Lowe avenue from the date of filing his bill herein, and the entire proceeds, whether in money or notes, received by appellant Annie Skahen from the sale of No. 7703 Lowe avenue. The accounting, when taken, should not be further extended. Appellant Annie Skahen will be taxed two-thirds of the costs in this court and appellee will be taxed one-third of the costs in this court. The cause is remanded to the superior court of Cook county, with directions to enter a decree in conformity with the views herein expressed.

*Reversed in part and remanded, with directions.*