EDWARD FOX *vs.* JOHN F. SHANLEY, ADMINISTRATOR.

Third Judicial District, Bridgeport, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, JS.

A motion for a nonsuit, in a case tried to the jury, cannot properly be granted, if its determination involves passing upon the credibility of witnesses; since that question is one for the jury.

Resulting, or presumptive, trusts are created by operation of law, and arise when the purchase price for property is paid by one and the legal title is taken in the name of another. Such a trust is in nowise dependent upon proof of a definite understanding between the parties.

While property purchased by a husband and conveyed by his direction to his wife is presumptively a gift to her, this presumption is one of fact only and may always be rebutted.

In the present case husband and wife in 1890 bought property for $5,500, the husband paying $1,900 in cash and the wife $1,100, and the wife giving a mortgage back for the remaining $2,500, of which the husband agreed with her to pay, and later did pay, $2,000, and the wife $500. Evidence was introduced that the husband's contributions were not intended as loans or gifts to his wife, nor were they understood to be such by her, and that the title was taken in her name rather than in their names jointly,

Fox *v.* Shanley.

only because the husband was unable to leave his business to attend to the conveyances when they were prepared, and the wife said the deed to her could be changed later so as to include them both as grantees. It also appeared in evidence that they lived together upon this property until her death in 1917; that he repeatedly asserted his right to his share of the property and that his wife always acknowledged the justice of his claim. After her death the husband sought to establish a resulting trust in his favor in the land in question, to the extent of his purchase payments, but was nonsuited in a trial to the jury. *Held:*—

1. That the court erred in ordering the nonsuit.
2. That upon the evidence submitted in behalf of the plaintiff the jury might reasonably have found the facts as claimed by him, and that upon such facts, had they been established, the plaintiff would have been entitled to judgment.
3. That the plaintiff and his wife stood in the same relation to the mortgage note and its payment, that they did with reference to the cash payment of $3,000, inasmuch as there was a definite understanding between them at the outset as to the liability of each for the deferred mortgage payments, and this understanding constituted part and parcel of the original transaction.
4. That the fact that the plaintiff did not pay a so-called "aliquot" part of the purchase price did not prevent a trust from resulting in his favor in proportion to the amount ($\frac{39}{66}$) which he contributed; there being no more uncertainty in declaring a trust for $\frac{39}{66}$ of the property than for one half or one tenth.

A witness who has testified to the substance of all the conversations with his deceased wife upon a given subject which he can recall, may then be asked if the decedent at any time in conversation with him denied the fact which, according to his detailed testimony, she had repeatedly admitted or acknowledged. Such an inquiry does not really call for a conclusion of the witness but for a negative fact.

A witness may testify directly to his intent, where that is material. Accordingly, a husband who had turned over the greater part of his wages or salary to his wife, may testify that he did not intend, in so doing, to give her what remained of such sums after paying the household expenses.

Argued October 29th, 1919 — decided March 5th, 1920.

APPEAL from the disallowance by the commissioners upon the estate of Marcella A. Fox, of a claim presented against her estate by the plaintiff, taken to the Superior Court in New Haven County where the plaintiff was nonsuited in a trial to the jury before *Webb, J.,* and

from the refusal of the trial court to set aside that judgment the plaintiff appealed.   *Error and cause remanded.*

*George E. Beers* and *Frank S. Bishop,* for the appellant (plaintiff).

*Franklin Coeller,* for the appellee (defendant).

GAGER, J.   This is an appeal from the doings of commissioners in denying the plaintiff's claim that certain real estate standing in the name of his deceased wife at the time of her death was affected with a resulting trust in his favor.   The case was tried to the jury and upon the conclusion of the plaintiff's case the court, upon motion, ordered a nonsuit, and this appeal is based substantially upon the refusal of the court to set aside the judgment as of nonsuit.

The transcript of the evidence shows that the jury might reasonably have found the following material facts, to wit:  The plaintiff and his wife were married in 1881 in New York.   Each had been previously married and had children living of the former marriage. The plaintiff and his second wife had no children. They came to New Haven to live in 1884 and for some time lived in an apartment.   In the spring of 1890 they saw that the property described in the claim was for sale.   Both examined the property, but agreed that the price of $5,500 was too high.   Together they saw the owner, who would not reduce the price, and finally plaintiff and his wife agreed to take the property for $3,000 cash and a mortgage of $2,500.   Plaintiff could then raise $1,900 and his wife $1,100, to pay together the $3,000, and they agreed to do this.   The owner asked if the deed should be made in both their names, and said both husband and his wife would

have to go to the lawyer's office to have the deed so made. Plaintiff relied on this statement of the owner, but on account of his business as foreman for the telegraph company, he could not go at the time set, and his wife said the deed could be changed later to both their names. Plaintiff went to his work, and his wife went to the lawyer's office and the deed was made out in her name alone, on April 8th, 1890. She gave her temporary note for $3,000 with the understanding that she would take it up in a very few days, and she also gave her note and a mortgage for the balance of $2,500. The temporary note was given to the owner as a sort of security until she and her husband could raise the two amounts making up the $3,000. This was done within a few days and the deed was recorded April 12th, 1890. The $3,000 to take up the temporary note consisted of $1,900 which the plaintiff undertook to raise on the cash payment and the $1,100 his wife undertook to raise, as they had agreed together. The $1,900 so furnished by the plaintiff was not a loan or a gift to his wife, but money then furnished by him toward paying for the property purchased, pursuant to the agreement made with them when discussing their ability to purchase. The deed to the wife alone, took that form solely because the owner had said both would have to go to the lawyer's, and because the wife said the deed could be changed afterward. The mortgage note of $2,500 was for five years from April 8th, 1890, and as between plaintiff and his wife was not understood to be the obligation of the wife alone. The plaintiff and his wife discussed how they could pay it. The wife could raise $500, and he said he thought they could save enough to pay the balance. Plaintiff received a monthly salary and turned it over to his wife except as he, at times, paid interest or used it for personal expenses. She paid interest out of it

at times, and out of the salary so turned over saved up enough so that she had on hand, when the note became due, the sum of $2,000, which, with her own $500, was paid to take up the mortgage note. This salary was not turned over to the wife as a gift or a loan, but to be used for general household purposes and to save the rest to pay the note, and the $2,000 so saved and used was plaintiff's money. The plaintiff and his wife lived together upon the property they had bought. Many times they talked of the deed; he asked about straightening out the deed, and the wife often said, in substance, that when he could get the time she would go with him and have the deed changed. It would appear from the testimony that for some reason the wife was at times more or less indisposed and unable to go, and the plaintiff's business as foreman for the telegraph company kept him busy during the daytime; and for these reasons, and one reason and another not definitely expressed, the change agreed to was put off from time to time and finally never made. The wife died February 12th, 1917. In 1916, in a conversation about the property, she said to him that she had made a will in his favor; that he had paid in the $1,900 on the property and the $2,000 on the mortgage and that he must get back what he had paid. It did not appear that any such will was made, and the wife's estate is being settled as an intestate estate represented insolvent.

The plaintiff claimed that his wife was a trustee for him to the extent that his money had paid for the property, to wit, $3,900, and that a resulting trust should be declared upon the property in his favor; and he also claimed damages.

The record shows that whether the jury would have found the facts stated above, would depend upon their opinion of the credibility of the witnesses produced,

and especially of the plaintiff, and to some extent as well upon inferences of fact. It is with us well settled that upon a motion for a nonsuit the court cannot pass upon the credibility of witnesses. "Where the granting of a nonsuit must depend in any appreciable degree upon the court's passing upon the credibility of witnesses, the nonsuit should not be granted." *Cook* v. *Morris*, 66 Conn. 196, 209, 33 Atl. 994; *Fields* v. *Fields*, 93 Conn. 96, 105 Atl. 347.

The question, then, is whether—assuming the jury had found, as they might have found from the testimony presented, that the facts were as above stated— the court was warranted in ruling, as matter of law, that upon these facts the plaintiff was not entitled to have his case left to the jury.

The foundation claim of the plaintiff is, that by paying $3,900 of the purchase price of the property deeded to the wife alone, a resulting trust arose to that extent in the property standing in the wife's name. In *Ward* v. *Ward*, 59 Conn. 188 (22 Atl. 149) a resulting trust is described (p. 195) as follows: "Resulting trusts are created by operation of law. They arise, notably, when the purchase money for property is paid by one and the legal title is taken in the name of another. In such a case a trust arises, at once, in favor of the person paying the money, and the holder of the legal title becomes a trustee for him. This result follows the natural presumption that a purchase will inure to him who furnishes the purchase price, and, of course, holds equally good when the title is taken to the purchaser and another jointly." In 1 Perry on Trusts (6th Ed.) § 124, it is said: "There is another class of trusts *which result in law* from the acts of parties, whether they intended to create a trust or not, and they are aptly designated as resulting trusts." In Bispham's Principles of

Equity (9th Ed.) § 78, it is said that resulting trusts "are said to *result* by operation or presumption of law from certain acts or relations of the parties from which an intention to create a trust is supposed to exist, and they are, therefore, called *resulting* or *presumptive* trusts." In *Barrows* v. *Bohan*, 41 Conn. 278, 283, it is said: "The whole doctrine of resulting trusts rests upon a presumed agreement between the parties. When the actual agreement between the parties is identical with the agreement which the law will imply from circumstances, as in this case, there can be no conflict, and no danger that the real intention of the parties will be defeated by operation of law. Such an agreement, therefore, will not defeat a resulting trust."

In the present case the $3,000 cash to be paid was unquestionably made up of $1,900 of plaintiff's money and $1,100 of his wife's money. The $1,900 was not a gift or loan to the wife, and the wife attended at the lawyer's office and took the deed in her own name purely on account of her husband's business engagement and the advice of the owner. Here, upon its face, is the precise relationship where one pays a part of the purchase money and title is taken in the name of another, which, within all the definitions, is a most common ground of a resulting trust.

Perhaps we can best get at the grounds of objection, by discussing the points upon which the ruling of the court was apparently made. The court stated, as one ground of nonsuit, that the plaintiff did not establish a definite and precise understanding between himself and his wife; that he had not attempted to state that there was an agreement between himself and his wife, and refers to *Corr's Appeal*, 62 Conn. 403, 407, 26 Atl. 478. In this the court erred. What was said in the *Corr* case was (p. 408): "The nature of the trust which the law

implies from the circumstances is not changed because the parties have actually made an agreement between themselves respecting the real estate, precisely identical with the one which the law imputes to them." See, also, *Barrows* v. *Bohan*, 41 Conn. 278. As stated above, the resulting trust is not dependent upon any agreement, but upon the presumed intention where there is no expressed intention. "In the absence of all evidence of intention, the law presumes a trust, from the natural equity that he who pays the money for property ought to enjoy the beneficial interest." Perry on Trusts (6th Ed.) § 124. The failure, therefore, to prove a definite and precise understanding between the plaintiff and his wife, was no reason for granting a nonsuit.

Again, the parties being husband and wife, the court, in discussing the motion, says: "You meet right away with the legal presumption, and the valuable presumption, and the rather—not conclusive, but powerful presumption—that until the contrary definitely and explicitly appears, the presumption is that the husband furnishing this money furnished it for the purchase of this property with the intention that it should be beneficial to the wife in the shape of a gratuity to enable her to consummate that purchase." This presumption referred to by the court is well recognized. In *Corr's Appeal*, 62 Conn. 403, 407 (26 Atl. 478) it is said: "When a man buys real estate with his own money and has it conveyed to his wife or other near relative, prima facie a gift is presumed. But this is a presumption of fact rather than one of law and may always be rebutted." In Pomeroy's Equity (4th Ed. Vol. 3) § 1041, having stated the presumption in case of family relatives or husband and wife, he says: "This result, however, is merely a presumption, and may be overcome. Extrinsic evidence, either written or parol, is admissible on behalf of the husband or parent paying the price to rebut

the presumption of an advancement or gift, and to show that a trust results; and conversely, such evidence may be used to fortify and support the presumption." While the court does not expressly say so, the clear inference from the remarks made is that it did not think the presumption had been overcome. This, however, goes to the effect of the evidence. Very direct evidence was offered, reaching from the inception of the transaction in 1890 to the year before the death of the wife in 1916, that the money paid by the plaintiff was not a gift or loan, and was not understood as such by the wife. It was for the jury to say whether the presumption had been overcome and not the court.

The court also says that, assuming the plaintiff had any rights when the property was bought, it believed he had abandoned them. Whatever the court may have meant by abandonment, there was evidence before the jury from which they might have found repeated assertions of his claim, and, in connection with such assertions, repeated recognition of its justice by his wife down to the year before her death. During these years the parties were living together on this very property, and nothing is disclosed which required the plaintiff to take legal steps against his wife or lose his claim. No adverse user, or denial of his rights, are disclosed, and no foundation appears for a claim of laches, abandonment, or the application of the statute of limitations.

The court, in connection with its remarks as to the failure to prove any agreement, referred twice to the failure to prove an agreement for an aliquot part. Upon the evidence it appeared that the entire purchase price was $5,500, and the plaintiff's claim was that he paid $1,900 of the $3,000 cash, and $2,000 of the $2,500 mortgage. Neither $1,900, nor $2,000, nor $3,900, are aliquot parts of $5,500. Strictly, "aliquot" means

contained in something else an exact number of times. As we have seen, no proof of an agreement is required. If a resulting trust required that a payment be of an aliquot part under this definition, manifestly the plaintiff cannot recover and a very large number of the modern cases of resulting trusts could not be sustained. It must be admitted that there are statements in the authorities and in the cases which support this claim, as to the meaning of aliquot part. 1 Perry on Trusts (6th Ed.) § 132; 39 Cyc. pp. 132, 133. In some of the cases "aliquot" refers to the estate; in others to the purchase money. Such a rule, applied according to the mathematical meaning of aliquot, would often prevent the very relief the doctrine of resulting trusts is designed to afford. No beneficial result can flow from such a restricted application of the term, and accordingly it has been many times held in the more recent cases that all that is necessary is to establish a definite amount paid as part of a definite whole, and a trust thereupon results *pro tanto* to the amount paid. Whether the part paid is aliquot or aliquant is immaterial. So far as adopted the aliquot part is defended on the ground of certainty, but surely there is no more uncertainty in declaring a trust for thirty-nine fifty-fifths than for one half or one tenth. The question is discussed and the above conclusions reached in *Skehill* v. *Abbott*, 184 Mass. 145, 68 N. E. 37; *Currence* v. *Ward*, 43 W. Va. 367, 27 S. E. 329; *Miller* v. *Miller*, 99 Va. 125, 130, 37 S. E. 792; *Hinshaw* v. *Russell*, 280 Ill. 235, 117 N. E. 406; Bispham's Principles of Equity (9th Ed.) § 81; 3 Pomeroy's Equity Juris. (4th Ed.) § 1038. We think that the true application of the term "aliquot," in cases of this character, is that it means a particular fraction of the whole as distinguished from a general contribution to the purchase money; *Skehill* v. *Abbott*, *supra;* and that such is the rule in this State though, so

far as we are informed, there has been no case in which this precise rule has been discussed. In *Waterman* v. *Buckingham,* 79 Conn. 286, 64 Atl. 212, plaintiff had placed $3,500 in the hands of Sherwood for investment; Sherwood put with it $500 and took title to the land, and it was held that a trust resulted to the plaintiff to the extent of seven eighths of the land purchased; that is, that in the whole land he took *pro tanto* to the purchase price that he had paid in. Here the rule of certainty was complied with; the technical aliquot rule was disregarded. We think the doctrine, referred to by the court as the aliquot rule, furnished no ground for a nonsuit.

The defendant, in support of the judgment rendered, claimed that whatever might be the result with reference to the original cash payment of $1,900, in no event could the plaintiff succeed as to the $2,000 which he claims he paid on the mortgage. The court made no such distinction in its ruling, but as the two amounts are separable, and the case will probably be retried, we will consider this proposition also. Assuming that the jury had found this $2,000 was paid with the money of the plaintiff at the time the mortgage note became due, five years after the purchase, the question arises whether a resulting trust may include money so paid in discharge of the purchase-money mortgage note signed only by the one originally taking the title. The result will depend upon the precise facts of the case. The difficulty arises from the application of the rule that the purchase money must be paid at the time of the purchase, and that a subsequent payment cannot raise a trust. The jury could have found that, from the first examination of the property to the recording of the deed and the giving of the mortgage, a single transaction was under way, though spread over several days. That, while the plaintiff was not, as to

the mortgagee, personally bound upon the note, the execution of the note and mortgage by the wife alone was really, and as to the plaintiff, in her character as trustee, with the agreement between them that he would pay $2,000 and she $500 on the note; and that as to the note and its payment they stood in the same relation they did with reference to the amounts furnished to make the cash payment of $3,000. We cannot see why that is not, as between the husband and his wife, an arrangement entered into at the time of the purchase by which, through the instrumentality of the mortgage note, the time of payment was extended, and the amounts paid respectively by the parties are to be considered on the same basis as the parts of the $3,000 cash payment. This matter of mortgage payments is discussed in Perry on Trusts (6th Ed. Vol. 1) p. 206, and a number of cases are there cited. All that appears to be necessary is a real understanding between the parties of a liability to pay which dates back to the time when the legal title passed, and which is part and parcel of the original transaction. The jury could certainly from the testimony have found such a situation in the present case. *Skahen* v. *Irving,* 206 Ill. 597, 69 N. E. 510; *Gray* v. *Jordan,* 87 Me. 140, 32 Atl. 793; *Gilchrist* v. *Brown,* 165 Pa. St. 275, 30 Atl. 839; *Leonard* v. *Green,* 34 Minn. 137, 141. These cases, and others that might be mentioned, show that the rule adverted to does not necessarily mean that cash payments shall in fact be made at the time the deed was taken. If payments are made subsequent to the passing of title because of a real understanding or obligation, which dates back to the time when the legal title passed, the amount originally paid may be enlarged by such subsequent payments. We do not think that the nonsuit can be justified upon any of the grounds urged.

The plaintiff incorporates in, his appeal certain adverse rulings upon the admission of evidence. As the same questions may arise upon a new trial, we advert to them briefly. After the plaintiff had testified at considerable length with reference to various interviews between himself and his wife, and had stated that he had given the substance of all the conversations with her that he could recall upon the subject, he was then asked: "Did your wife at any time in conversation with you deny that you had put $1,900 into the Bradley Street house?" This question was objected to and excluded. In view of what the witness has just stated, it was perhaps needless or of slight importance. The objection that appears is that it calls for a conclusion. We think that is altogether too narrow a view. What is called for is really a negative fact.

The question of whether the plaintiff turned over his salary to his wife as a gift was under consideration, and the plaintiff was asked: "At the time you turned over your salary to your wife, either in the form of a check or cash, did you on those occasions intend to give your wife the balance remaining after the payment of the household expenses?" This was objected to and excluded. In *Guinan's Appeal*, 70 Conn. 342, 347, 39 Atl. 482, a gift is defined as a "transfer of property without consideration. It requires two things: a delivery of the possession of the property to the donee, and an intent that the title thereto shall pass immediately to him." See, also, *Meriden Savings Bank* v. *McCormack*, 79 Conn. 260, 64 Atl. 338; *Doolan* v. *Heiser*, 89. Conn. 321, 94 Atl. 354; 20 Cyc. p. 1193; 12 R. C. L. p. 931. The question, then, is whether in a situation where the intent of the witness is material, he may testify directly as to his intent at the time of the transaction under investigation. We think he may,

since intent is a mental fact requisite to create a gift. The question is quite elaborately discussed in Wigmore on Evidence (Vol. 1) § 581. See, also, Wharton on Evidence (3d Ed.) §§ 482, 508, 955, and *State* v. *Ferguson,* 71 Conn. 227, 231, 41 Atl. 769. The other exceptions were not pursued upon the brief.

There is error and the cause is remanded to be proceeded with according to law.

In this opinion the other judges concurred.