LOUISE SIEGMAN v. JOSEPH SORRENTINO, JR., EXECUTOR
(ESTATE OF ROY HAVILAND)

SUPERIOR COURT      FAIRFIELD COUNTY      FILE NO. 77175

Memorandum filed July 21, 1949

*John P. Knox,* of Greenwich, for the Plaintiff.

*Gordon & Kuriansky,* of Stamford, for the Defendant.

*Frank J. DiSesa,* of Stamford, for Alphonse Sorrentino, Jr.

ALCORN, J. The plaintiff seeks a decree that certain realty standing in the name of the defendant executor's decedent is in fact the property of the plaintiff, and a decree compelling its conveyance to the plaintiff, or such other relief as may be proper. The estate has not been settled.

In addition to admissions and denials, the defendant executor pleads six special defenses—first, that the action is premature because plaintiff has presented a claim against the estate for the purchase price of the property which has not been acted upon by the executor pending an appeal from his appointment; second, that plaintiff is estopped by having elected to file a claim; third, that plaintiff has accepted a life estate

in the property given her under the will and so is estopped from claiming the fee; fourth, she is barred by laches for not asserting her claim to the property during decedent's life; fifth, her action is in derogation of the rights of creditors of the estate; and sixth, that no claim was presented for the subject matter of this action.

The plaintiff first went to live at the premises in question in 1923 as a roomer. A Mrs. Price then owned the property. The plaintiff has lived in the house continuously since that date and is still there. In 1937 the deceased took a room there and lived there until his death on April 27, 1947. The presence of other lodgers from time to time is not significant. In 1943 Mrs. Price died, and in 1945 her son and daughter decided to sell the house. At that time the plaintiff and the defendant's decedent were living there and Mrs. Price's son and daughter came to the house to state their intention to sell. Defendant's decedent had no money with which to buy and so informed them, but the plaintiff, rather than lose her home, undertook to consider a purchase. Shortly therefater a price of $4000 was agreed upon and the plaintiff drew that amount from her bank account and paid it for a conveyance of the property. Neither buyer nor seller had an attorney, and a quitclaim deed, drawn by a town clerk, was executed by the grantor and delivered to the plaintiff on August 18, 1945. At the plaintiff's suggestion the name of defendant's decedent was inserted as grantee. The plaintiff took the deed home, and, unaware of the need for recording, kept it in her bureau until the defendant's decedent felt well enough and asked to see it. She showed it to him, he took it, and the plaintiff has not had it since. It now appears to have been recorded on January 16, 1946. The plaintiff had no intent to make a gift.

The plaintiff was seventy-two years old at the time of trial. The defendant's decedent was forty-nine at the time of his death, about two years before trial. He was in poor health for seven or eight years before his death and suffered acute attacks at intervals which disabled him for weeks at a time. He was divorced, had no apparent contact with his mother or his daughter, and, in the absence of anyone else to care for him, the plaintiff ministered to him in his illness. The evidence abundantly indicates that he used his disability to work on the plaintiff's kindness and to induce her to humor him. The eventual result was that he dominated her to a marked degree.

When the plaintiff was preparing to buy the property he told her to have the deed drawn in his name, otherwise he would have to get out because it would not look right for him to live there with the plaintiff owning the property. For that reason, the plaintiff had the deed so drawn on his assurance that he would have papers drawn to show her payment for the property. The seller warned the plaintiff at the time of conveyance to get the title in proper form to protect herself, and from the date of the deed until defendant's decedent's death the plaintiff repeatedly asked him to correct the title to show the true situation. His reply was that she must trust him, though once he said he had made a will and left the property to her.

He kept possession of the deed, which the plaintiff had turned over to him, and at his death it was found in a box in his room with a will, dated in 1945, leaving plaintiff a life estate in the real estate and its contents and thereafter disposing of it with the contents to the defendant Alphonse Sorrentino, Jr., a youth twenty years old at the time of trial, whom he had met for the first time in 1944. Much of the contents of the house undeniably belonged to the plaintiff. The executor is this devisee's brother. In the box with the deed and will were receipts for bills connected with the property, many of which are shown to have been paid by the plaintiff, but the evidence of payment had been demanded and kept by defendant's decedent.

Nothing is to be gained by detailing the financial transactions following the deed. In summation, however, they disclose a considered scheme to use the plaintiff's resources to maintain the property while accumulating receipted bills as proof, on their face, of the fallacy that the decedent was the actual property owner and was paying the bills. His only resource was his $25 weekly wage, when he was able to work, as head usher in a moving picture theater.

The circumstances of the purchase of this property gave rise to a resulting trust in the plaintiff's favor. *Fox* v. *Shanley*, 94 Conn. 350, 355. On January 29, 1948, the plaintiff made written claim against the estate for the $4000 which she paid for the property. By so doing she did not deprive herself of the right, in the alternative, to seek the property itself in this action. *Pritchard* v. *Todd*, 38 Conn. 413, 416. Nor can it be said that this action is premature because it is not an action on the claim. Consequently the first two special defenses fail.

The next three defenses are ineffective because the plaintiff has continued to occupy the property as she has for over twenty-five years, but she has obviously done nothing to accept the life estate under the will, she repeatedly but unsuccessfully demanded a correction of the title while the deceased was alive, and she is not to be deprived of her property because there may be some other creditor of the estate who might like to look to it to satisfy some claim against the deceased.

The final defense, that she did not file a claim for the property itself, is equally without merit because not a prerequisite to this action. *McDonald* v. *Hartford Trust Co.*, 104 Conn. 169, 189. A definite injustice would be done if the plaintiff were not to recover this property.

A decree may enter directing the defendant executor to convey the property described in exhibit A attached to the complaint to the plaintiff.