Dolan *v.* Dolan.

---

MICHAEL DOLAN *vs.* ALICE DOLAN.

First Judicial District, Hartford, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, JS.

In 1912 the plaintiff husband turned over to the defendant, his wife, the sum of $500 realized from the sale of his farm, with which she opened a savings-bank account in her name. Thereafter he handed her virtually all of his earnings which she mingled with small amounts derived by her from the sale of fruit, eggs and chickens and, after deducting therefrom the necessary household expenses, added the balance to the savings account by frequent deposits which, in 1926, totaled more than $5,400. Out of this fund, they purchased a home which, with the husband's consent, was taken in the wife's name for the purpose, as explained by him to the conveyancer, of keeping "peace in the family." During this entire period, the wife kept no account of their respective contributions to the fund nor was there any express agreement concerning their proportionate interests, it being merely understood that it existed for their joint benefit in maintaining their home and meeting their current obligations. In 1926 they quarreled and separated and, upon the refusal of the wife to recognize her husband's rights in the

Dolan *v*. Dolan.

property, he brought the present action for an accounting. *Held:*

1. That the legal presumption that property turned over by a husband to a wife is intended by him to be a gift was rebutted by the circumstances of the present case.
2. That this presumption removed, the property rights of the parties were, under the law obtaining in this State since 1877, essentially the same as those of unmarried persons.
3. That the legal relationship between the parties was that species of informal partnership known as a joint adventure which arises when two or more persons combine their property, money, efforts, skill or knowledge in some common undertaking other than a general business enterprise.
4. That in order to constitute a joint adventure, it was not necessary that the parties enter into an express agreement to that effect or that they make definite provision for the minor details of their common undertaking, it being sufficient that these elements be supplied by justifiable inference from their conduct and the surrounding circumstances.
5. That since a continuance of the relation was now rendered impracticable by their disagreement and separation, it was within the power of a court of equity to decree a dissolution and division of the common fund.
6. That, until the contrary was shown, it would be presumed that the parties intended an equal division of the fruits of their joint efforts; and that the husband was, therefore, entitled to a judgment for one half of the accumulated property.

Argued January 3d—decided February 28th, 1928.

ACTION for an accounting of moneys alleged to have been turned over to the defendant by the plaintiff for safekeeping, for a decree compelling the defendant to transfer and deliver to the plaintiff a mortgage deed and note, for damages, and for other relief, brought to the Superior Court in Hartford County and tried to the court, *Yeomans, J.;* judgment for the defendant, and appeal by the plaintiff. *Error.*

*James B. Henry*, for the appellant (plaintiff).

*Frederic J. Corbett*, for the appellee (defendant).

HAINES, J. The appellant seeks many changes in the finding and has brought before us all the evidence

in the case, including exhibits of two savings bank accounts. A study of this evidence discloses that with two exceptions none of the findings objected to were made without evidence to support them and should stand. Paragraph sixteen of the finding states that the work at the Ambassador Apartments continued for four years, but the evidence seems to be undisputed that it was five years, and this change is made accordingly. Paragraph twenty-seven states that the deposits which the defendant made in the Society for Savings represented money obtained from her various employments. By the later addition of paragraph thirty-three to the finding, this is shown to be incorrect and it is stricken out. The initial deposit of $500 in 1912 was money handed to the defendant by the plaintiff, being part of the proceeds of the sale of his tobacco farm. None of the additions to the finding which the appellant now seeks, are admitted or undisputed facts save in three instances. These facts are undisputed: From 1909 to 1917, the earnings of the husband after he sold the farm were $10 to $12 per week, but afterward to 1926, his wages were $32.50 per week and have been so to date. From 1917 to 1926, the defendant did little remunerative work, though deriving some income from the sale of fruit, eggs and chickens. Paragraphs two and four of the appellant's claims are added to the finding to the extent indicated. The appellant also asks that a summary of the savings bank deposits as shown by the exhibits be added. It appears from these that the defendant deposited the following sums in the years indicated: In 1913, $30; 1915, $10; 1916, $40; 1917, $130; 1919, $750; 1920, $500; 1921, $840; 1923, $1122; 1924, $600; 1925, $400; 1926, $1150. These were in addition to certain other sums traced to real estate transactions or other sources, and in addition to

Dolan *v.* Dolan.

the initial deposit of $500, which is already found by the trial court to have been the husband's money. This summary is added, and with these changes the finding stands.

The husband handed nearly all his income to his wife, who mixed those moneys with her own derived from various sources, and kept no account, but paid all household expenses and deposited the balance in the savings bank in her own name. It is clear that the earnings of both parties were very moderate from the time of the marriage until the husband obtained his position as janitor of the Ambassador Apartments in 1917. From an earning capacity of $12 to $15 per week, his income then rose to $32.50 per week, with rent, heat, light, milk and ice, free, and this continued at the time of the suit. The savings deposits clearly reflected this change in the family circumstances. Aside from the $500 of the husband's money with which the savings account was opened the total deposits from 1912 to 1917, were but $80. On August 1st following, however, $130 was deposited, and the total deposits to the time of the suit amounted to more than $5,400. The striking significance of these facts is emphasized by the lack of any other adequate explanation of this vastly increased prosperity and capacity for saving than the husband's increased earnings. On the facts before us, it is obvious that the fund now in question has resulted from the combined incomes of both husband and wife. The fact is also found that there was never any agreement between these parties as to these moneys which were saved. Under these circumstances, the judgment in favor of the wife can only be supported upon the theory that the money which the husband handed her was intended by him as a gift to her. In the absence of facts to rebut the conclusion, the law would presume

as a fact that that was the intention. *Fox* v. *Shanley,* 94 Conn. 350, 357, 109 Atl. 249; *Wilson* v. *Warner,* 89 Conn. 243, 245, 93 Atl. 533; *Corr's Appeal,* 62 Conn. 403, 407, 26 Atl. 478; 3 Pomeroy's Equity Jurisprudence (4th Ed.) §1041.

Whether the trial court was justified in relying on this presumption and rendering judgment that this fund belonged to the wife, depends therefore upon what is disclosed by the amended finding of facts. From this it appears that, out of the combined incomes, the wife, by mutual agreement, first paid all the household expenses. When there was a surplus over and above what was needed for this purpose, she deposited it in the savings bank, taking the deposit book in her own name. With the fund so created, including the $500 which the husband had received from the sale of his farm, the wife, with his knowledge, bought the Madison Avenue property. The title to this property was taken in her name, also it appears, by mutual agreement, the husband's reason being "because the defendant would be better satisfied and not quarrel with the plaintiff as long as it was in the name of the defendant," and the plaintiff said to the conveyancer, "Put it in her name and we will have peace in the family." It further appears that this property was transferred to the wife "as a home for both the plaintiff and the defendant." All this is inconsistent with and clearly rebuts any presumption that the surrender of title to the wife and her possession of either cash or real estate was intended by the husband as a gift to her. If the fund belonged to the wife, the consent of the husband to the plan of putting the real estate in her name would have been wholly unnecessary. It is at least a fair if not a necessary inference from the foregoing facts, that the title would not have been so taken without that con-

sent, and save for the reasons he gave for doing so. They were living together as husband and wife. Each was well aware that the money with which the purchase was being made had been accumulated by their joint efforts; the husband had earned and furnished most of the money and the wife, by thrift, had saved it, and a home was now being bought for their joint use and benefit. We can find nothing in the situation which indicates that either party then looked upon the property as that of the wife alone; nor is it in any way suggested that their individual interests were to be aliquot parts or dependent upon the amounts which each had personally furnished in cash. Both apparently recognized that the fund in the hands of the wife was made up of moneys of each which had been pooled for their joint benefit in maintaining their home and paying the current obligations of their household. Such a mutual understanding would make it a fund definitely appropriated to their joint benefit. If the custodian is able by thrift, as she appears to have been in this case, to save any part of such a joint fund, the part so saved cannot be said to lose its character as a joint fund until some different understanding is reached, but remains in the possession of the custodian with the same legal status which it had when placed there. The record contains nothing to show that they ever had any other understanding. The property rights of husband and wife in this State since 1877 are now essentially those of unmarried persons; each has full right to contract and to acquire and hold property independently of the other, and their respective rights to the fund in question are determinable upon the same legal principles which would apply were the parties unmarried, if the presumption of gift has been removed. We are thus brought to consider a joint fund to which the individual contri-

butions apparently cannot be definitely calculated, and without any agreement or understanding as to the proportions in which the parties were to enjoy the benefits of the joint enterprise.

In those States where the doctrine of "community property" has been established by statute, a fund of this character would naturally fall within that designation, and husband and wife would each be entitled to one half of the fund. The doctrine is based upon the conception that the marriage relation "is a species of partnership between husband and wife, whereby they are to share equally in the benefit and enjoyment of the results of their joint or separate industry, labor, and earning capacity," and husband and wife have equal beneficial interests in it. 31 Corpus Juris, pp. 47, 49. Though this doctrine has never been the subject of legislation in this State, we have held that where a mixed fund of this character results from an understanding or agreement between husband and wife, and all the facts and the terms of the agreement have been ascertained, it may become a question of law whether or not their interests are those of partners. *Morgan* v. *Farrel,* 58 Conn. 413, 423, 20 Atl. 614; *Norwalk* v. *Ireland,* 68 Conn. 1, 16, 35 Atl. 804. If the facts were such that an intention could be fairly presumed to create an interest for a specific amount or proportion of the whole fund, a trust would result in favor of the husband. 1 Perry on Trusts (6th Ed.) §§124, 125; *Fox* v. *Shanley,* 94 Conn. 350, 357, 109 Atl. 249; *Wilson* v. *Warner,* 89 Conn. 243, 248, 93 Atl. 533. As we said in *Barrows* v. *Bohan,* 41 Conn. 278, 283: "The whole doctrine of resulting trusts rests upon a presumed agreement between the parties."

In the present case, the facts disclosed strongly indicate that each originally understood that they were

Dolan *v.* Dolan.

engaging in a joint enterprise, but they had no under-standing as to the sharing of the results of their joint action.

It thus appears that their relation was what at common law was looked upon as a sort of informal partnership. It would probably still be so considered in the British Dominion, but in this country it is commonly defined as a joint enterprise or adventure. While the distinction between a partnership and a joint adventure is often very slight, it is commonly considered that, as respects the character of the enter-prise, a partnership is formed for the purpose of carry-ing on a general business of one sort or another, and a joint adventure is more commonly limited to a single transaction or course of transactions. 33 Corpus Juris, p. 842. "To constitute a joint adventure two parties must combine their property, money, efforts, skill or knowledge in some common undertaking." *Wilson* v. *Maryland,* 152 Minn. 506, 510, 189 N. W. 437. There is not the relation of principal and agent in joint ad-venture which we find in a partnership. *Keyes* v. *Nims,* 43 Cal. App. 1, 184 Pac. 695.

Here was a joint fund in the hands of the defendant wife, placed there with the mutual understanding that she was to handle it for their mutual advantage, the first requirement being that she pay the family obli-gations, and there was no express understanding or agreement beyond this. In a joint adventure it is not necessary that there be an express agreement, for the conduct of the parties and other circumstances will often justify the inference that such an agreement existed; and the contract is not avoided for indefinite-ness because the minor details are not fully established.

Whatever was done by the wife in the handling of the fund would result to their mutual advantage or disadvantage. She was able after a time to turn the

fund to their advantage by saving and investing a balance after the payment of the family expenses. Each party to a marriage contract in this State now being *sui juris* there is no longer any obstacle to the assumption of the relation of joint adventurers, and the facts of this case as they are now disclosed by the record, warrant the conclusion that the plaintiff and defendant occupied this relation with reference to this fund. Their disagreement and separation which has now taken place renders it impracticable to continue the relation, and it is of a sufficiently serious nature to justify a court of equity in decreeing a dissolution and a division of the fund. 33 Corpus Juris, p. 850, §32.

Until the contrary is shown, the law will presume that the parties intended an equal division of the results of their joint efforts, and the court will enter a decree accordingly. *Morin* v. *Pilon,* 158 Wis. 411, 149 N. W. 140; *Hoge* v. *George,* 27 Wyo. 423, 200 Pac. 96, 97; *Knapp* v. *Hanley,* 108 Mo. App. 353, 83 S. W. 1008; *Wetmore* v. *Crouch,* 150 Mo. 671, 51 S. W. 738; note, 50 L.R.A.(N.S.) 1047, 1052; 15 R.C.L. 502; 33 Corpus Juris, 861.

It is clear that the facts found do not support the conclusion reached by the trial court and the judgment was erroneous.

There is error, the judgment is reversed and the Superior Court directed to enter a decree that the defendant forthwith account to said court for all money and property of said joint fund in her hands and pay to the plaintiff one half the amount so accounted for.

In this opinion the other judges concurred.