## AARON TUCHMANN
### vs.
## RITA TUCHMANN

Superior Court      Fairfield County      File No. 62249

MEMORANDUM FILED JULY 22, 1942.

*Joseph J. Devine*, of Bridgeport, for the Plaintiff.

*Leonard J. McMahon*, of Danbury, for the Defendant.

Memorandum of decision in action between husband and wife involving ownership of real property.

O'SULLIVAN, J. This action involves a controversy between husband and wife as to the ownership of a parcel of land, title to which now stands in the latter's name.

It appears that prior to 1938, Mr. and Mrs. Tuchmann were living in New York City where his business interests

were centered. He had, at one time, been engaged in the distribution of cosmetics; later, he entered the construction field, and finally became interested in various real estate ventures. To implement these latter, he made use of a group of corporations in which he was the dominant figure. His experience was fairly broad. He was no stranger to lawsuits, having participated in several, a circumstance which may account for his courtroom poise, a characteristic that always seems to develop in the litigious.

Tuchmann treated his wife with greater lavishness than his economic position warranted. In this respect, he was improvident, a trait of which Mrs. Tuchmann was only too well aware. To her, it was a matter of deep concern, for she longed for a greater degree of security for her son and herself than was possible by a continuation of the unsettled mode of life adopted by her husband. She finally persuaded Tuchmann that it would be for the best interest of the family to move to the country and there to establish a home. This resulted in their searching for a place to buy. Eventually they discovered one in Brookfield that struck their fancy. It was owned by a Mrs. Brink and they opened up negotiations for its purchase.

During the fall of 1937, an agreement was reached and a written contract of sale was drawn up and executed by Mrs. Brink, on the one hand, and Mrs. Tuchmann on the other. Of its terms, the only ones necessary to refer to are these: the property was to be sold for $14,000, $1,000 in a down payment, $3,000 when title passed, and the balance to be absorbed by Mrs. Tuchmann's note for $10,000, secured by a purchase-money mortgage payable in quarterly installments of $500 each, and bearing interest on the unpaid balances at the rate of $5\frac{1}{2}\%$ per annum. The $1,000 was paid to Mrs. Brink when the contract was signed. Title was to pass during January, 1938, but the date was advanced to March 10th, in as much as Tuchmann happened to be short of funds at the time. On the latter date, he had borrowed $3,000 from his wife's aunt and this he used to pay the balance of the required cash. Mrs. Brink then delivered her warranty deed in which Mrs. Tuchmann was named as grantee, who, in turn, delivered her note for $10,000 to Mrs. Brink and secured it by a purchase-money mortgage on the property.

Shortly after this, Mr. and Mrs. Tuchmann moved to Brook-

field and maintained the place as their home. Tuchmann began to putter about the property, making various repairs and improvements, the most costly of which was a chicken coop. He also paid certain taxes and fire insurance premiums.

When the first quarterly installment on the mortgage note fell due, Tuchmann paid it and continued to pay subsequent ones until and including that of April, 1940. By these payments, he reduced the mortgage indebtedness by $4,500 in addition to paying $989.98 as interest.

It was during June, 1940, that Tuchmann for the first time suggested to his wife that she convey to him an undivided one-half interest in the property. Thereafter, his suggestion ripened into a demand which he renewed many times, but with each one of which Mrs. Tuchmann has refused to comply. On January 31, 1941, he instituted the present action. At that time he was still living on the property and he continued to do so until the fall of 1941, when he left and shortly thereafter began an action for divorce, returnable to this court on the first Tuesday of January, 1942.

Following April, 1940, Mrs. Tuchmann borrowed from her aunt sufficient funds to meet seven installments totalling $3,500 and interest amounting to $410.51. The last payment was made on March 7, 1942, which reduced the face of the note to $2,000, though it is now in default.

Within recent months, the United States of America has placed an attachment for $3,000 on the property. The basis for this proceeding is a note which Mrs. Tuchmann endorsed at her husband's request for a transaction not connected with the Brookfield home. Another attachment in the amount of $1,000 has likewise been made by the lumber company that supplied the material for the chicken coop.

The plaintiff presents a triple-headed theory to apply to the foregoing facts and claims that at least one of them entitles him to the relief he seeks. He maintains, in the first place, that a trust has resulted in his favor. "Resulting trusts are created by operation of law. They arise, notably, when the purchase money for property is paid by one and the legal title is taken in the name of another. In such a case a trust arises at once, in favor of the person paying the money, and the holder of the legal title becomes a trustee for him. This result follows the natural presumption that a purchase will inure to him who

furnishes the purchase price." *Ward vs. Ward,* 59 Conn. 188, 195. However, when the person furnishing the money is the husband of the grantee, *prima facie* a gift is presumed. *Corr's Appeal,* 62 Conn. 403, 407. This is merely a presumption which has no evidential value and is exhausted and disappears from the case when substantial evidence tending to rebut it has been presented. It is a presumption that rests upon inherent probability. *O'Dea vs. Amodeo,* 118 Conn. 58.

One must always bear in mind that the vital time for the creation or non-creation of a resulting trust is when the legal title is taken in the name of the other. "A trust must result, if at all, when the title passes." *Ward vs. Ward, supra,* p. 199. Hence, the importance of ascertaining Tuchmann's intention at the passage of title becomes apparent, for if, at that time, he intended to make a gift to his wife, it is quite immaterial that he now wishes to change his mind. This does not mean that events occurring after March, 1938, should be ignored. On the contrary, they should be and have been examined, not for the purpose of creating a trust but as indicia of what was in Tuchmann's mind when he vested title in his wife. "The *modus vivendi* of the parties in respect to the property, since the title passed, may be important as an indication of such intention in the absence of any proof aside from that furnished by the bare transaction." *Ward vs. Ward, supra,* p. 199.

I am satisfied that Tuchmann always regarded the property as his home, not in the sense that he owned it, but exactly as his wife would have considered it to be her home, were Tuchmann its owner. His payment of taxes and insurance premiums, his repairing and improving the property are readily explainable, not as indications of ownership, but as the natural activities of one eager to provide comforts for himself and his wife, who he knew could not provide them herself or meet the expense attendant upon the ownership of property.

I do not mean to say that comparable activities would have the same significance in all cases. On the contrary, they might well lead to a different conclusion. But as applied to the instant case, they are not inconsistent with Mrs. Tuchmann's ownership of the land.

During her residence in New York City, she was constantly in search of security for the family. She sought to have a

home she could call her own. The family had shuttled about in various places and permanency of residence was not a mark of the family life. The financial stability of her husband was probably not precarious but it obviously was uncertain, especially during the latter period of their New York life. For at that time, he became a promoter, and through a group of corporations whose financial structures were such as to require the juggling around of cash assets to meet the need of the moment, endeavored to provide support for his family on a scale more lavish than was justified. Litigation was not at all novel to him. He had money one day, and was financially embarrassed the next, and of all of this his wife was fully aware.

He probably realized the merit of his wife's complaints as to the insecurity of the family position and decided that she should be given a home. And when he made the down payment on the purchase price of the Brookfield property, his purpose, I find, was to make a gift to his wife.

The length of time that elapsed before he made the slightest reference to a reconveyance of an interest in the property has its own significance. Likewise is it significant that within a few months after making his demand, he left the home and instituted suit for divorce against his wife. Significant, too, is the admission found in his complaint that he intended to make a gift to his wife, though limited, he says, to a one-half interest. Significant, also, is the ugly conclusion to which I am reluctantly forced to come, that with studied deliberation he attempted to deceive the court as to alleged conversations held in the office of Messrs. Durey, Pierson & Comley when the warranty deed was delivered.

Weighing all the circumstances carefully and conscientiously, I am satisfied that when the property was purchased, his intention was to make a gift and was prompted by a desire to have Mrs. Tuchmann know that at long last she was to obtain the security for the family which she had always sought. That he has since regretted his action and changed his mind is of no consequence.

The second and third theories urged by the plaintiff are that the parties were engaged in a joint adventure, and if not, then, that he ought to recover on the ground that the defendant has been unjustly enriched.

As to the former, it will suffice to say that the elementary conditions necessary to establish the existence of a joint adventure are missing. There was no common undertaking nor a combining of the parties' money, property, efforts, skill or knowledge aimed at one common objective. *Dolan vs. Dolan,* 107 Conn. 342. The entire subject matter of this controversy arises from a gift and from nothing else.

As to the latter theory, no question can be raised but that Mrs. Tuchmann was enriched. That attribute follows the receipt of any gift; that is the very purpose of the donor. But the enrichment was not unjust. It was an enrichment that Tuchmann intended to create when he reduced the mortgage and improved the property. He cannot now insist it was an Indian gift.

I have considered this case for longer than is customarily my wont, lest perhaps a failure to give proper weight to the various factors involved might lead to an unjust conclusion. I do the gentleman no injustice, I am sure, when I hold that he has failed to establish his case.

Judgment may enter for the defendant to recover her costs.