### ALFRED L. DUGAS ET UX.
*vs.*
### HARRIET D. MACDONALD

Court of Common Pleas  New London County  File No. 9544

MEMORANDUM FILED DECEMBER 22, 1942.

*Charles L. Stewart,* of Norwich, for the Plaintiffs.

*Maurice W. Meyer,* of Norwich, for the Defendant.

Memorandum of decision in action in conversion.

FITZGERALD, J.  The within action was returned to court on the first Tuesday of September, 1942.  At the trial on December 14, 1942, the court gave permission to Rosalinda L. Dugas, wife of the original plaintiff, to be added as a party plaintiff.  The complaint is in two counts, the first of which

alleges a cause of action sounding in conversion and the second being in the common count for money loaned. At the trial the plaintiffs withdrew the second count and stood on the first.

The plaintiffs' theory is that possession of a certain 1939 Buick automobile, claimed to be the common property of both, was turned over to the defendant by the plaintiff husband under an arrangement having the legal characteristics of a bailment only, and that on June 27, 1942, the plaintiff husband demanded a return of possession of the car which the defendant refused to surrender, thereby resulting in a conversion of the car by the defendant upon her refusal to surrender possession thereof.

The defendant readily admits that the plaintiff husband gave her possession of the car but denies that there was a condition attached to the arrangement. In short, the defendant takes the position that the car was the sole property of the plaintiff husband and that he made her an absolute and unconditional gift of it prior to June 27, 1942. In a word, the defendant claims that the plaintiff husband comes within the category of that class frequently referred to as "Indian givers."

The subordinate facts require a brief recital.

The plaintiffs intermarried in Connecticut in 1929 and there are two children of the marriage. In 1938 the plaintiffs moved to Paterson, N. J., where the husband had obtained employment and continued to reside there until 1941. The car in question was purchased for $1,100 by the husband in July, 1939, under a conditional sale contract providing for a series of monthly installment payments. The initial down payment was made by the husband and the wife thereafter paid nearly all of the subsequently accruing installments from money turned over to her by the husband out of his weekly wages. In February, 1941, the last installment was paid under the conditional sale contract of July, 1939. The wife never held an operator's license and never operated a car. It would appear that the only connection that the wife had with the car was the installment payments made by her from the family cash fund furnished by the husband and administered by her. There was no evidence that the wife ever rode in the car as a passenger. The husband was named as the conditional vendee in the sale contract and the car was originally registered in his name in New Jersey.

Since November, 1941, the plaintiff husband has been employed in Pennsylvania. His wife and children now reside, and for some time past have been residing in a small New London County town. It has been the custom of the plaintiff husband to drive up to Connecticut on an occasional weekend in another car owned by him and visit his wife and children. These occasional trips, at least up until the spring of 1942, included visits to the defendant's home where the plaintiff husband would put up overnight due to the fact that there was no sleeping accommodation for him at his mother-in-law's home where his wife and children were staying. The evidence in its entirety compels the conclusion, however, that the plaintiff husband's occasional week-end jaunts to Connecticut were primarily to visit the defendant and only secondarily to see his family.

Prior to February, 1941, the plaintiff husband turned over possession of the car to the defendant. At the time the car was still registered in his name and carried New Jersey license plates. In due course the defendant was advised by a constable, and others, that if the car was to remain in Connecticut and be operated on the highways here it would have to carry Connecticut license plates. When informed of this situation the plaintiff husband gave permission to the defendant to have the car registered in her name in Connecticut and cooperated with her in effecting this change in registration and license plates. This transaction was completed in late February, 1941.

The defendant claims that her ownership of the car commenced with the change in registration, if not before. Letters of the plaintiff husband offered in evidence by the defendant, many of which embody expressions of endearment, are conclusive that the plaintiff husband conferred exclusive title and ownership in the car upon the defendant. Apart from these letters, there was additional evidence to the effect that in November, 1940, the plaintiff husband said to the defendant in the presence of a third party: "The car is yours if you want it"; and "Do with it what you will"; and "You can burn it up or let it rot in the yard." It would appear that in November, 1940, the defendant was satisfied in merely having the use of the car, for she then stated, in effect, that she did not want the car in the sense of becoming the owner thereof. It is found that ownership of the defendant, in the technical sense, commenced with the change in registration in February, 1941. This finding is made apart from any statute

dealing with the registration of motor vehicles and is predicated solely upon the circumstances of the case including the continued declarations of the plaintiff husband and the absence of a refusal by the defendant. The defendant's exclusive use of the car going to and from her place of work, expenditures in connection with maintenance of the car, and the nature of the relationship between her and the plaintiff husband are such as to warrant a finding of subsequent acceptance in law and in fact.

In argument plaintiffs' counsel has directed the court's attention to the testimony of an automobile salesman who testified that in June, 1941, he inquired of the defendant whether she would consider turning in the car on the purchase of a new model, to which she replied in substance: "I couldn't do anything along those lines until I talk with Fred"—the plaintiff husband. Counsel would have the court interpret the defendant's answer to the salesman as an indication that she recognized that the car was not hers to do with as she liked. The court does not place this interpretation upon the defendant's statement to the salesman. It must be remembered that the relationship between this man and woman at that time was one of close friendship and the words are equally susceptible to the interpretation that the defendant relied upon the judgment of her "friend" in matters relating to business transactions.

Apparently recognizing that the oral and written statements of the plaintiff husband would weigh heavily against him in the court's analysis of the case, plaintiff's counsel invokes on behalf of the plaintiff wife the case of *Dolan vs. Dolan,* 107 Conn. 342, on the proposition that since many of the installment payments on the car were made by the wife out of the family cash fund, she should be deemed to have an undivided one-half interest in the car which could not be the subject of a gift by her husband to another without her consent. The *Dolan* case is concerned with an action for an accounting between a husband and wife. In the case at bar the plaintiff wife, so far as the evidence discloses, never made any contribution of her own to the family cash fund. The money comprising the fund derived its entire source from the plaintiff husband's wages. Moreover, the car was never used as a "family car." The wife knew that possession of the car was turned over by her husband to the defendant and also knew

that in February, 1941, it was registered in Connecticut in the defendant's name. She said and did nothing. Whether or not the wife knew of the exact status of the relationship between her husband and the defendant was a matter not gone into at the trial. The plaintiff's marriage certainly has not been a happy one and there has been some talk between them concerning a divorce. So also the plaintiff husband and the defendant have discussed the question of the former's prospective divorce with a view of their marriage thereafter to one another. Certain phases of the case lead the court to believe that the plaintiffs (the husband having experienced a change of heart so far as the defendant is concerned) are bent upon a program of recouping assets for a very special purpose. What that purpose may be is not germane to the narrow issues in this case.

Lastly, plaintiffs' counsel in argument has sought to draw a parallel of the case at bar with the case of *Farley vs. Fitzsimmons,* 97 Conn. 372. It is his claim that if the court concludes that the plaintiff husband made a gift of the car to the defendant, the gift as such was an improvident one and detrimental to the financial welfare of his family. The argument is of no avail. The *Farley* case is concerned with an action brought by the administrator on the estate of a 76-year-old woman who sued in his representative capacity to recover savings bank deposits transferred by the decedent after she had suffered a serious stroke resulting in her death a very short time thereafter. Said the Supreme Court in its concluding remarks on the appeal (p. 380): "We should find it difficult to sustain a finding, except upon convincing proof, that a woman had made a transfer of her entire possessions for the benefit of others, when she was seventy-six years of age and sick, and by her act stripped herself of everything she had and retained nothing for her sustenance, her care in sickness, the payment of her just debts and her funeral expenses. The improvidence of such a transaction would be persuasive evidence of mental incapacity, or imposition, or misunderstanding. These considerations are conclusive of the case."

The facts of the case at bar and the allegations of the complaint definitely distinguish the case from the *Farley* case and make inapplicable the rule applied in the latter case. There is no question but that the plaintiff husband is a poorer, but the court hopes a wiser, man for his experience. The fact

that the money which went into the purchase price of the car could have been, and should have been, employed for better purposes, is of no consequence at this late date.

It has been said that "the greatest study of mankind is man himself." There are certain aspects of the case that are not to the credit of the plaintiff husband and the defendant in a moral sense. The court has endeavored to avoid a moral trend in its writing. The court is not asked, and the circumstances do not require, a writing having for its objective a censure of any of the parties. That is left for the Higher Tribunal before whom all men and women some day must appear for an accounting of their earthly deeds and misdeeds. The case before this court is decided on the factual aspects with a due regard for applicable principles of law.

Counsel are entitled to the praise of the court for their presentation of a subject matter which required delicacy as well as adroitness.

The issues are found for the defendant. Accordingly, judgment will enter for the defendant to recover her costs.