PETER FRANKE v. MARY C. FRANKE

SUPERIOR COURT        NEW HAVEN COUNTY        FILE No. 74001

Memorandum filed January 17, 1951.

*Louis Feinmark,* of New Haven, for the Plaintiff.

*David FitzGerald, Jr.,* of New Haven, for the Defendant.

ALCORN, J.   The parties are husband and wife and this action arises out of their conflicting claims to the ownership of shares of stock in a family corporation.   The allegation in the plaintiff's complaint is that he caused a corporation to be formed known as The Honey Boy Popcorn, Inc., and turned over to it the assets of a popcorn business owned and operated by him in-dividually together with certain real estate which he owned, in exchange for 100 shares of issued stock of the corporation and that he "caused ninety-eight (98) shares of said one hundred (100) shares of stock to be placed in the name of the defendant on the agreement and understanding of the defendant that the equitable ownership of said stock would remain in the plaintiff and that the defendant would cause record ownership of said stock to be placed in the plaintiff at any time that the plaintiff desired."

No evidence was offered of any express agreement of the na-ture alleged.   Instead the plaintiff's claim of proof was that the circumstances under which the stock was issued to the defendant gave rise immediately to a resulting trust for the plaintiff's bene-fit.   The defendant, on the contrary, claims that the transaction was a gift.   Most of the evidence at the trial centered around the activities of the parties in the operation of the business subse-quent to the formation of the corporation for its significance as an indication of the intent of the parties at the time the stock was issued in the defendant's name.   *Ward* v. *Ward,* 59 Conn. 188, 199; *Tuchmann* v. *Tuchmann,* 11 Conn. Sup. 192, 195. The attorney who formed the corporation and in whose office its organization was completed has since died, so that his re-collection of the circumstances and intention of the transaction is not available.   His secretary, who was one of the incorporators,

concededly has no present recollection of events whatever and for that reason was not called as a witness. The real intent in the transaction must be arrived at from an evaluation of the testimony of the interested parties bolstered by any significance which can be found to attach to their conduct during a period of many years following the transaction itself.

The plaintiff came to this country from Italy in 1905 and, being without education, worked at various unskilled jobs, and finally gravitated into the concession and popcorn business. In 1918 he started such a business at Savin Rock and operated it in his individual name continuously from that time until 1929. During that period he had become the owner of the real estate in West Haven where he lived and of the popcorn concession with the equipment incident thereto which he operated at Savin Rock. The defendant was born in this state and received schooling only through the fifth grade. On May 24, 1929, the defendant was divorced from her former husband, a carnival worker with whom she had worked at a stand in Savin Rock, and on June 17, 1929, she married the plaintiff. At the time of the defendant's marriage to the plaintiff she had no money or property and immediately following her marriage she started working with the plaintiff at his popcorn stand.

About two weeks after their marriage the question of incorporating the plaintiff's business was discussed between them. The plaintiff's version is that the incorporation was suggested by the defendant in order to obviate trouble for her in the event of the plaintiff's death, in that, if the stock of the corporation was in her name, the plaintiff being a man would know what to do if she died first, but if the plaintiff died first the defendant could avoid the problem of probate proceedings. The plaintiff says the stock was issued in the defendant's name, not as a gift, but only so that the defendant would have no difficulty in the event of his death. The defendant's contention, upon the other hand, is that the plaintiff suggested that he would incorporate his business and give her most of the stock as a wedding present, and she suggests further that this was both because of the long hours and hard work she was devoting to the business and also to pacify her because she had discovered, subsequent to the marriage, that the plaintiff had been previously married and divorced. The discovery of the plaintiff's real intention at the time the stock was issued in the defendant's name, as between these conflicting claims, presents the issue in the case. *Ward* v. *Ward,* supra, 199.

Following the conversation between the parties, the plaintiff consulted an attorney of his own choice, discussed with him the formation of a corporation, and secured his approval. Subsequently, both parties went to the attorney's office and on July 30, 1929, a certificate of incorporation was completed providing for a corporation with an authorized capital of $25,000 divided into 250 shares of $100 each, the incorporators being the plaintiff, the defendant, and a secretary in the attorney's office. The corporation was organized with a paid-in capital of $10,000, for which 100 shares were issued and paid for in property transferred to the corporation. This property for which the stock was issued consisted solely of property transferred to the corporation by the plaintiff and comprised his entire personal assets, including both his real estate and his popcorn business. The defendant contributed nothing. At the time the defendant went to the attorney's office she did not know how many shares of stock were going to be issued to her, but with the plaintiff's approval three certificates were prepared by the attorney, one in the name of the defendant for ninety-eight shares, one in the name of the plaintiff for one share, and one in the name of the attorney's secretary for one share. An assignment of the certificate issued to the secretary was signed by her in blank. The defendant, mistakenly understanding from the attorney that she was also expected to sign the certificate, signed an assignment in blank of the certificate issued to her, but before the organization meeting broke up the attorney eradicated her signature from the certificate and told her not to sign it until it was to be transferred. Following the formation of the corporation, the certificate issued in the defendant's name was delivered to her and the other two certificates were delivered to the plaintiff. The defendant continuously thereafter kept her certificate among the linen in a chest at the home which the parties occupied together. Considerable evidence centered around the claim of the plaintiff that all three certificates were delivered to him and were stored by him in a theatrical trunk which he kept in his garage until about seven or eight years ago. It is his claim that nothing else was stored in the trunk and he removed the certificates from it in order to give the trunk to some undisclosed individual, and at that time he brought the certificates into the house and kept them in a bureau drawer in the bedroom occupied by the parties, from which the defendant extracted hers some time around 1946. This claim is not proved to be the fact.

Following the formation of the corporation, the parties did not observe the corporate entity but thereafter, until 1946, the business was conducted under the personal direction of the plaintiff. He did, however, discontinue his personal checking account and used instead a bank account in the name of the corporation upon which he signed the checks as treasurer. At the organization of the corporation he had been designated president and treasurer and the defendant had been designated vice president. During all of the period from 1929 to 1946 the defendant, as well as the plaintiff, devoted long hours and diligent effort to the affairs of the business in doing the various duties which the operation of the stand required. No corporation meetings were held except to fulfill the technicalities with respect to mortgage financing on the real estate which the plaintiff had transferred to the corporation. Some of the bills, lease, licenses, orders and contracts in connection with the business were in the name of the plaintiff individually, while others were rendered to the corporation, to "Peter Franke, Honeyboy Popcorn Co.," to "Peter Franke, Inc.," or to "Peter Franke Popcorn Co." The wrappers on the popcorn which was sold carried the label "Peter Frankes Honey Boy Popcorn" both before and after the corporation was formed. The plaintiff supervised the stand, hired employees and defined their duties, sold the product at wholesale on the road, made purchases, did the ordering, handled the cash, made the bank deposits, and signed the checks, although the latter were drawn indiscriminately by various employees. The defendant had access to and possession of cash taken in at the stand but turned it over to the plaintiff to handle the deposits. The defendant took household moneys from the cash as needed and the plaintiff, in turn, took what he wanted for his purposes, and cash for business needs was paid out at the stand by whoever was in charge at the time. At the year's end an amount was computed and put on the books as salary to the plaintiff simply to correspond with the amount of cash he had actually drawn.

This procedure went on for some seventeen years and the plaintiff lays great emphasis upon it as evidencing the lack of any gift of the stock to the defendant and as indicating, on the contrary, that both parties regarded the plaintff as the real owner of the business. The conduct of the parties, however, must be regarded both in the light of their limited education and the nature of the business. Neither one is shown to have any appreciation of the niceties of corporate operation. Nor is there anything about the handling of a popcorn concession at

an amusement park which necessarily requires any elaborate corporate procedure. While their product was apparently popular and was sold not only at retail but in wholesale lots to other concessionaires and institutions, nevertheless, the business could be and was operated successfully in a most informal manner. Whether the results of the parties' efforts, after the formation of the corporation, might be considered in the nature of a joint adventure is not an issue at this time. *Brower* v. *Perkins*, 135 Conn. 675, 683; *Dolan* v. *Dolan*, 107 Conn. 342, 349. The question, rather, is whether this conduct is convincing corroboration of the plaintiff's claim as to his intention when the corporation was formed in 1929.

The presumption of a resulting trust which normally arises by operation of law when property is fully paid for by one person and title is taken in the name of another is subject to an exception where the parties are husband and wife. In such a case the transaction is regarded prima facie as a settlement upon the grantee. *Ward* v. *Ward*, 59 Conn. 188, 196; *Reynolds* v. *Reynolds*, 121 Conn. 153, 156. The defendant says that the plaintiff's intent was to make her a wedding present. Coming so soon after the wedding, it is perfectly reasonable to conclude that this was so. Undeniably, the plaintiff intended to transfer the legal title in the stock to the defendant. The delivery of the certificate made out to the defendant was sufficient to accomplish this. General Statutes, §§ 5185, 5187. Not until this action was brought, nearly twenty-one years thereafter, did the plaintiff assert any right to have the stock transferred to him. In the meantime, his activity in the affairs of the corporation is not necessarily inconsistent with a completed gift of the stock to the defendant when it was issued to her. The situation is not dissimilar to that in *Hartford-Connecticut Trust Co.* v. *Slater*, 114 Conn. 603, where valid gifts of corporate stock were found to have been made although the donor by common consent retained "practically complete control both as to the conduct of the business and the disposal of the assets of the company" (p. 606-607) and stated "that he wanted to get his livelihood out of the store" (p. 608).

The question as to the plaintiff's intent is one of fact. *Meriden Trust & Safe Deposit Co.* v. *Miller*, 88 Conn. 157, 162. It is concluded that the issuance of the stock in dispute to the defendant in 1929 was intended by the plaintiff as a gift to her at that time.

Judgment may enter in favor of the defendant.