Thelma Goldstein *v.* Nathan S. Ancell et al.,
Executors (Estate of William G.
Goldstein), et al.

King, C. J., Alcorn, House, Thim and Ryan, Js.

Argued April 3—decided May 6, 1969

*Harry L. Nair,* for the appellant (plaintiff).

*Reuben Sudarsky,* for the appellees (named defendant et al.).

KING, C. J.  The plaintiff is the widow of William G. Goldstein, late of West Hartford, who died on March 29, 1965.  The parties were married on December 3, 1950.  Each had been previously married, the plaintiff's first husband having died in 1947, and the decedent's first wife having died in 1949.  There were no children of the second marriage, but the decedent was survived by two adult children of his first marriage, Enid (Goldstein) Ancell and Max R. Goldstein, who, with Enid's husband, Nathan S. Ancell, are executors of the decedent's will.

The plaintiff and the decedent first resided together in West Hartford in a house on Whetton Road, a life estate in which had been left to him by his first wife.  In 1956, he purchased from his

daughter, Enid, the remainder interest in the Whetton Road property for $25,000, for which he gave her his promissory note. This note was presented as a claim against the estate, and its payment was approved by the Probate Court. In 1956, he sold the Whetton Road property for about $50,000 and in September purchased a building lot on Kirkwood Road, also in West Hartford, taking title in his own name and negotiating a $25,000 construction mortgage with the Dime Savings Bank. Advances were made up to the full amount of the mortgage note, on which the decedent was the sole obligor. The note was payable in equal monthly instalments over a period of twenty years but was payable on demand if the payee at any time so desired. In 1958, the decedent was confined to his home for about three weeks with a heart insufficiency, and on October 1 of that year, the decedent, through a third person or "straw man", by quitclaim deeds, conveyed his interest in the home (Kirkwood Road) property to the plaintiff and himself as joint tenants with right of survivorship. No mention of the mortgage was made in the deeds, there was no assumption of the mortgage, in whole or in part, by the plaintiff, and the mortgage note continued to be the sole obligation of the decedent.

Up until his death, all payments on the mortgage note had been made by the decedent or on his behalf, and there was then owing a principal balance on the note and mortgage of $18,079.12. On June 22, 1965, within the period allowed for the presentation of claims, the plaintiff presented a claim demanding the exoneration of the mortgaged property from the amount owing on the mortgage at the date of the decedent's death. This claim was disallowed in toto, and the present suit was instituted. Also on June

22, 1965, the plaintiff had requested the mortgagee bank to present a claim for payment of the indebtedness, but the bank refused to do so, preferring to rely on the security only.

While the plaintiff bases her claim to exoneration on several grounds, as we view the case it is necessary to consider only one of them. That is the claim that executors are required to pay all debts of the decedent owing at his death, and that this necessarily included this debt. This claim to some extent oversimplifies the problem in that it fails to distinguish between the duty of the executors to a creditor, such as the bank, and their duty to the plaintiff. Obviously, if the bank had wished to present a claim for the unpaid balance of the note, it could have done so, and had such a claim been properly presented, the executors would have been under a duty to pay it. But when the time for the presentation of claims had expired, without the bank's having presented any claim, the Statute of Nonclaim was an effective bar to any liability of the executors, or the estate, to pay the bank as far as the bank was concerned. *Lubas* v. *McCusker,* 153 Conn. 250, 254, 216 A.2d 289. This liability, however, ran only to the bank. There still remains the plaintiff's claim for exoneration from the mortgage debt which she presented to the executors, which they disallowed in toto, and which is the subject matter of this action.

The note and mortgage on the property constituted the personal obligation of the decedent, alone, and indeed, at the time the mortgage loan was taken out, he was the sole owner of the property. It was about two years later that the quitclaim deeds, without mention of the mortgage, created, as previously noted, the joint tenancy with right of survivorship in the plaintiff and the decedent.

There is nothing to indicate that any notice was filed in the land records by either the plaintiff or the decedent within one year after June 29, 1959, as provided in § 47-14k of the General Statutes, and this left applicable to the joint tenancy any pertinent statutory modifications of our law as to incidents of co-ownership of real estate embraced in No. 677 of the Public Acts of 1959 and now forming §§ 47-14a—47-14k of the General Statutes. Joint tenancies both under Connecticut common law and under the 1959 statute are thoroughly discussed in Stephenson, "Survivorship Deeds under the [1959] Statute," 34 Conn. B.J. 15. We find nothing, however, in the statute which modifies the common-law rule in any respect pertinent to our decision of this case.

Upon the death of the plaintiff's husband, his interest in the property ceased, leaving the plaintiff as the sole owner of the equity of redemption, subject to the encumbrance of the bank mortgage.

Thus, it is clear that no interest in the Kirkwood Road property came into the estate of the decedent or passed from that estate to the plaintiff. Consequently, we are not here concerned with any right of exoneration or discharge of an indebtedness secured by a mortgage covering property passing to a devisee or legatee under the will. Cases of this type are collected in an annotation in 4 A.L.R.3d 1023, 1029.

Rather, we are concerned with the right of a surviving spouse to exoneration by the decedent's estate respecting an encumbrance on property held in joint tenancy with right of survivorship. Cases of this type are collected in an annotation in 76 A.L.R.2d 1004. While most of the cases in the annotation involved tenancies by the entirety, we find no differ-

ence, so far as the problems in this appeal are concerned, between a tenancy by the entirety, which is not recognized or permitted in Connecticut, and a joint tenancy of husband and wife with a right of survivorship, such as we have here. See cases such as *Dennen* v. *Searle,* 149 Conn. 126, 132, 176 A.2d 561; *New Haven Trolley & Bus Employees Credit Union* v. *Hill,* 145 Conn. 332, 334, 142 A.2d 730; *Florio* v. *Greenspan,* 340 Mass. 642, 644, 165 N.E.2d 753.

The cases on the problem here are not in complete harmony, and most of them involve situations where husband and wife were personally liable as joint and several obligors on the debt secured by mortgage. The majority rule, and, as we think, the better rule, accords to the surviving spouse, in such cases, an equitable right to receive from the decedent's estate, at least where, as admittedly was the case here, the general personal estate of the decedent is sufficient for the purpose, exoneration, to the extent of the equitable share of the decedent as a co-obligor on the joint and several obligation which was secured by the mortgage on the property. This interest, in the case of husband and wife as joint and several co-obligors, prima facie would amount to one-half of the indebtedness secured by the mortgage on the property at the date of death, although evidence would be admissible that as between the two joint and several obligors the equitable share of one in the joint and several personal obligation was greater than that of the other. See cases such as *Dolan* v. *Dolan,* 107 Conn. 342, 350, 140 A. 745.

Under the minority rule, the court ignores the personal liability of the decedent and looks to the interest of the survivor in the property after death and, since that is a complete interest in the equity of

redemption, denies to the survivor any right of exoneration, contribution or reimbursement.

We agree with the annotator that the former rule is probably the better. For one thing, it is entirely consistent with the settled rule requiring the payment of the testator's debts by his estate.

Applying the majority rule here, it is obvious that, since there was no personal liability of the plaintiff on the note, and the entire personal liability was that of the decedent, his estate should have exonerated in full the Kirkwood Road property. This is so regardless of whether the bank did or did not present a claim; *Beard's Appeal,* 78 Conn. 481, 483, 62 A. 704; because even though there was, and still is, no personal liability of the plaintiff to the bank, as a practical matter she will be obliged to pay the indebtedness in order to avoid foreclosure and keep the property. This she should not equitably be required to do. There is no sound reason why the decedent or his estate should, by the mere fact of his death prior to that of the plaintiff, be relieved of all liability to pay an indebtedness evidenced by a note on which he was the sole obligor. As already pointed out, the only reason why his estate is not obligated to pay the bank the full amount of the note is because of its failure to present a claim to the executors.

The defendants claim that the will itself manifests a clear intent on the testator's part that his estate not pay the mortgage indebtedness and that that intent is controlling.

The decedent's will, in article II, contained the following provision: "I direct that the expenses of my last illness and funeral, and all of my just debts, including any sums owed to my children now evidenced by promissory notes but excepting any other

debts which may be secured by mortgage on any real estate of which I may die seized, be paid out of my estate as promptly after my decease as may be reasonably convenient."

While the parties are in controversy over the meaning of the word "seized", we may assume, without so deciding, that the defendants' construction of the language of the will is correct. But the intention of the testator, thus construed, is not effective in this case, since the property has not come into the estate and thus could not be affected by the will. The defendants have confounded the situation here with the familiar one where there is a testamentary disposition such as a devise of real estate encumbered with a mortgage. The testator may, of course, condition such a testamentary disposition as he pleases, and his intent, if clearly expressed, would be effective to limit his gift to an equity of redemption in the mortgaged property. See cases such as *Higinbotham* v. *Manchester,* 113 Conn. 62, 66, 154 A. 242; *Bishop* v. *Howarth,* 59 Conn. 455, 465, 22 A. 432; *Turner* v. *Laird,* 68 Conn. 198, 200, 35 A. 1124. But nothing of the kind exists here. The will of the decedent could not act adversely on the plaintiff's survivorship ownership of the equity of redemption, which never formed any part of the assets of the estate. The will could, under General Statutes § 45-175, establish the order in which property in the estate would be taken for the payment of debts or charges against the estate, including the liability to exonerate the plaintiff's property from the bank mortgage. But it could not effectually provide that the executors refuse such exoneration. It was an utterly invalid attempt, in a will, to destroy the plaintiff's right of exoneration which existed entirely apart from, and independent of, the will, and

concerned no property on which the will could operate. See *Connelly* v. *Wells,* 142 Conn. 529, 534, 115 A.2d 444; *Jacobs* v. *Button,* 79 Conn. 360, 365, 65 A. 150. Indeed, the purported direction in the will not to pay the mortgage note is as inoperative with respect to the plaintiff as it would have been had the defendants attempted to apply it to the bank (assuming it had presented a claim), and for a basically similar reason. The plaintiff's right of exoneration, of course, came from the creation of the joint tenancy. It in nowise was derived from the will or from statutes of distribution.

The decision denying the plaintiff exoneration is erroneous, and further proceedings will be necessary. These will require the fashioning of a decree providing for such equitable relief as may be adequate to protect and assure the equitable rights of the plaintiff in conformity with this opinion. The decree should include provision for reimbursement of the plaintiff for payments she has been required to make to the bank on the mortgage since the decedent's death because of the failure of the defendants to exonerate the plaintiff's property from the mortgage. And if the bank can, and does, refuse to accept full payment of the entire balance due on the mortgage, equitable protection should be accorded the wife against the distribution or dissipation of general personal property in the testate estate to an amount which will jeopardize her exoneration from the payments of principal and interest as they become due during the balance of the term of the mortgage.

There is error, the judgment is set aside and the case remanded for further proceedings in conformity with this opinion.

In this opinion the other judges concurred.