PER CURIAM.
This appeal presents a question which has not been ruled upon in this jurisdiction. Viz: When a prospective bridegroom, is the sole obligor on a note secured by a mortgage on real estate; he subsequently takes a wife and transfers title to the property into himself and his wife creating an estate by the entireties whereby the wife does not assume the indebtedness; he passes away prior to satisfying the note; is his estate, upon payment of the note, entitled to be subrogated to the lien of the mortgage securing such note or entitled to a lien upon the mortgaged property to secure indemnity for payment of the indebtedness?
We have carefully considered this question and the disposition of it in other jurisdictions. We reach the conclusion that the trial judge, in an able opinion, has correctly decided the question. Therefore, we adopt his opinion as the opinion of this court:
“From the testimony and documentary evidence introduced at such non-jury trial and the admissions in the pleadings, the Court finds that the following facts have been established:
“Stanley C. Minshall, a widower, and Elva Holloway, a widow, were married on or about August 19, 1966. It was the third marriage for Mr. Minshall and the second for Mrs. Holloway whose first husband, Dr. Holloway, died in 1962. They had known each other for many years, Mr. Minshall and Dr. Holloway having been close friends of long standing prior to the latter’s death. Shortly after Dr. Holloway’s death, Mr. Minshall began visiting Mrs. Holloway in her home; and during a period of some three years prior to the marriage, Mr. Minshall endeavored to prevail upon Mrs. Holloway to become his wife.
“In contemplation of the marriage, Mr. Minshall on August 18, 1966, purchased residential property as the intended marital home which is described as:
Lot 84, Block 1, SNELL ISLE BRIGHT-WATERS UNIT ‘G’, per Plat Book 39, Page 69, of the Public Records of Pin-ellas County, Florida.
“At the time of such purchase the property was encumbered by a mortgage held by Union Trust Company, and Mr. Min-shall executed a document entitled Assumption Agreement in and by which he assumed, endorsed, and agreed to pay and discharge the mortgage and the note secured thereby. On the same date Mr. Minshall and Mrs. Holloway executed an Antenuptial Agreement by which it was agreed that if Elva Holloway should survive Stanley Minshall as his widow, she would make no claim of dower or otherwise against the stock or business of Minshall the Florist, Inc., or against any indebtedness of such corporation to Mr. Minshall, but that such provision would not bar the right of Elva Holloway to compute the value of the business in having dower assigned. Also, on the same date, Mr. Minshall executed a Last Will and Testament in and by which he bequeathed all of his corporate stock in Minshall the Florist, Inc., to his daughter, Marian Minshall Lucciola, and provided that any monetary obligation to him of Minshall the Florist, Inc., at the time of his death should be cancelled. By such Will, he made no disposition of the remainder of his estate, and provided that such remainder, after payment of debts, should be disposed of as though he were intestate.
“On August 22, 1966, Stanley C. Minshall executed a deed of conveyance to' his then wife, Elva Minshall, of such interest in the above described property as to create an estate by the entireties. Mrs. Minshall incurred no personal liability thereby or otherwise for the mortgage indebtedness. Thereafter, Stanley C. Minshall made the monthly payments coming due on the mortgage note until the last payment prior to his death which occurred unexpectedly on or about January 24, 1967. He was survived by two adult daughters who joined the Administrator as plaintiffs in Case No. 10,096.
*193 “The aforesaid Will of Mr. Minshall was admitted to probate in Pinellas County and administration of his estate was commenced by The First National Bank in St. Peters-burg as Administrator c. t. a. of such estate. Union Trust Company, owner of the mortgage, filed a claim against the estate for the mortgage indebtedness. Thereafter, Union Trust Company sold and assigned the note and mortgage to Ursula G. Cooper who then filed a claim in her own right against the estate for the mortgage indebtedness. The claims were objected to and Ursula Cooper instituted suit on the note against the Administrator c. t. a. which resulted ultimately in judgment in her favor for the amount of the indebtedness, accumulated interest, costs, and attorneys’ fees.
“Such judgment has not yet been paid or satisfied in whole or in part, although claim thereon has been filed in the Minshall Estate.
“By this litigation there is sought a declaratory judgment determining whether or not upon payment of the Cooper judgment for the indebtedness on the mortgage note, the Administrator will be subrogated to the lien of the mortgage securing such note or be entitled to a lien upon the mortgaged property to secure indemnity for payment of the judgment indebtedness.”
jft ‡ % % %
"It must be borne in mind that this is not a situation where a donor gives property to a donee subject to a mortgage, divesting himself of title to the property and looking to the donee to pay the mortgage indebtedness. When Mr. Minshall created the estate by entireties, he gave to Mrs. Minshall an indivisible interest in the property and retained in himself an identical interest. Upon his death, Mrs. Minshall acquired no new or different estate. The husband’s interest merely terminated. Gerson vs. Broward County Title Co., Fla.App., 116 So.2d 455, 456. After creation of the estate by entireties, Mr. Minshall continued to be the sole obligor for the indebtedness evidenced by the mortgage note. He continued making the monthly payments until shortly before his death. Mrs. Minshall never has been personally liable for such indebtedness, and it would be inequitable to impose such liability upon her which in effect would be done by the subrogation or lien sought by the Administrator.
“Had Mr. Minshall paid the debt during his lifetime, which apparently he intended to do, the mortgage would have been discharged, it being security for his own debt. Even had he (the decedent) taken an assignment back from the mortgagee, he could not have foreclosed against his wife’s interest in the property. Brocato vs. Brocato, Fla., 74 So.2d 58. Had he paid the debt only minutes before his death, the discharge would occur and the mortgage lien could not have been revived in favor of the personal representative. It would seem that the Administrator must stand in decedent’s shoes, and that payment of the indebtedness can confer no greater or different right on the Administrator than would have been conferred upon decedent had he made payment prior to death.
“There appears to be no precedent for the situation here among reported Florida decisions. Lopez v. Lopez, Fla.App. [Fla.] 90 So.2d 456, is not applicable because there the widow was personally liable for the mortgage indebtedness. The case of Goldstein vs. Ancell (Conn.) [158 Conn. 225], 258 A.2d 93, is.very similar factually to the case sub judice. In that case the Supreme Court of Connecticut held that the widow was entitled to exoneration by her late husband’s estate from the mortgage debt. It appears from the Connecticut Court’s opinion that the husband purchased a lot on which he constructed a home, taking title in his name alone and giving a mortgage for a construction loan. The mortgage was payable monthly over a period of years. Subsequently, he created a joint tenancy in him and his wife with right of survivorship. The wife did not assume the mortgage and the note continued to be the sole obligation of the hus *194 band who continued making the monthly payments thereon until his death. After his death the bank which held the note and mortgage refused to file a claim against his estate for the balance due, preferring to rely on the security of the mortgage. After the Statute of Nonclaim had run, the widow brought action to compel the Executors to exonerate the property from payment of the mortgage. The lower court denied the relief, but the appellate court reversed, saying, inter alia, the following:
“ ‘ * * even though there was, and still is, no personal liability of the plaintiff to the bank, as a practical matter she will be obliged to pay the indebtedness to avoid foreclosure and keep the property. This she should not equitably be required to do. There is no sound reason why the decedent or his estate should, by the mere fact of his death prior to that of the plaintiff, be relieved of all liability to pay an indebtedness evidenced by a note on which he was the sole obligor.’
“That reasoning applies equally in the instant case wherein the factual situation appears to favor the widow more strongly than in the Goldstein case.”
We have considered the other point on appeal and find it to be without merit.
Affirmed.
PIERCE, C. J., and LILES and HOB-SON, JJ., concur.