[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO REVIEW(DOCKET ENTRY NO. 118) AND MOTION FOR RECONSIDERATION(DOCKET ENTRY NO. 116)
By way of background, the parties appeared before the court on June 2, 1997, on a motion for alimony and support, pendente lite, brought by the plaintiff. The court heard evidence and, on June 9, 1997, issued a memorandum of decision. The memorandum set temporary alimony and support, unallocated, in the sum of $4,750 per month. The parties had agreed that any order would be retroactive to January 21, 1997. Accordingly, the court found an arrearage of $20,425 ($4,750 times 4.3 months), and ordered that the arrearage be paid at the rate of $1,250 per month.
The parties had further agreed that the defendant should receive a credit for any alimony and support payments previously made. The court found that evidence concerning credits was CT Page 13385 "ambiguous, unclear and insufficient to determine the amount of any credit", and therefore disallowed any credits.
The defendant then filed a motion for reconsideration, claiming that a transcript of the proceedings would demonstrate "that proof of some credits was uncontroverted, clear and was sufficient." The court denied the defendant's motion for reconsideration without prejudice, stating that the court would review any transcript.
The defendant next filed a motion to review (docket entry no. 118) with a copy of the pendente lite hearing transcript and the parties' affidavits submitted at the hearing attached. The plaintiff duly filed an objection to the motion to review. When the matters appeared upon the short calendar, the court (Harrigan, J.) transferred the motion to review back to this court.
This court grants the motion to review. The court has scoured the motion for review, transcript, affidavits and the objection of the plaintiff. Having done so, this court believes that the presentation of the evidence by the defendant was more than somewhat disjointed. However, the court's reading of the transcript (more than once) has put in clearer order the testimony and other evidence. Accordingly, this court can, and does find, the following facts for purposes of the pendente lite hearing, only.[1]
The parties to this action were married. Both parties were employed. They had a historic practice concerning the handling of their earnings and expenses. The earnings of the defendant were more substantial than those of the plaintiff. The defendant's earnings went into an account at Citibank. From that account, the defendant would pay the parties' expenses, including shelter expenses. The defendant put his remaining earnings into an account at People's Bank. The plaintiff put her earnings into the same account at People's Bank. This was a joint account of the parties.
The plaintiff left the marital residence in November, 1996. The defendant remained in the residence. There were two minor children, issue of the marriage. The parties exercised shared physical custody of the children.
At some point, the Citibank account was "frozen." The CT Page 13386 circumstances of this remain unclear to the court. In any event, the defendant, instead of depositing his earnings into the Citibank account, deposited them at Westport Bank Trust Company, now Lafayette Bank. The defendant testified that all of his earnings, so deposited, would remain untouched and subject to distribution by the court in its final dissolution orders.
Instead of continuing to pay expenses from his earnings, the defendant began paying all expenses from the parties' joint People's account. Further, when the balance of that account was depleted, the parties liquidated jointly held assets for the purpose of replenishing the People's account.[2] It is the nature of these funds at People's, and the nature of expenses paid, that are under scrutiny of this court for the purpose of determining what, if any, credits should be allowed to the defendant against the alimony and support arrearage.
Before going further, it is necessary to consider the nature of the ownership of funds on deposit at People's. The defendant testified that, because he historically earned three times as much as the plaintiff, that three quarters of the funds on deposit are his, and one quarter of the funds on deposit are the plaintiff's. The court rejects the defendant's analysis. The intention of the ownership of monies by a husband and wife, both of whom worked and contributed earnings to a joint account, is one of fact. Driscoll v. Norwich Savings Society, 139 Conn. 346,349 (1952). Especially instructive to this court is the case ofDolan v. Dolan, 107 Conn. 342 (1928). In Dolan, the husband and wife made admittedly disproportionate contributions to a joint fund which was used to meet necessary expenses of the parties. The parties then separated. The Supreme Court stated that, in the absence of evidence to the contrary, it would be presumed that each party would be entitled to one-half of the fund. Dolan, supra, at 350.
Notwithstanding the disparity in the parties' earnings here, this court does not find evidence of any intent which would cause one party to have a disproportionately greater interest in the People's account, or in the assets used to replenish that account, than the other party. Therefore, expenses paid from that account should be pro rated equally.
The court next examines the evidence at the pendente lite hearing to determine what expenses, and the amount thereof, were in the nature of alimony and support paid by the defendant. The CT Page 13387 court allows the summer camp expense of $5,408, the car insurance expense of $430, and all the remaining expenses of $17,200 ($4,000 per month times 4.3 months) (transcript page 46). These allowable expenses total $23,038. The court disallows expenses for payment of the mortgage on the marital home, inasmuch as this was for the benefit of the defendant and not the plaintiff, as well as the income tax reserve which the court finds was not adequately proven as an actual expense.
The court then takes the allowable expenses of $23,038, and divides this in half, for a sum of $11,519. The court so divides the $23,038 on the basis of the rationale previously stated, supra.
When the arrearage of $20,425 is reduced by $11,519, there is a remainder of $8,906. It is this sum which is the final arrearage to be repaid to the plaintiff. The court reinstates its earlier order that the arrearage should be paid at the rate of $1,250 per month. If the trial court (Harrigan, J.) makes a different order concerning payment of the arrearage, then it is that order which shall control.
So ordered.
KAVANEWSKY, J.